FERNANDEZ, Circuit Judge:
 

 Larry M. Siegel appeals the district court’s grant of summary judgment in favor of Federal Home Loan Mortgage Corp. (“Freddie Mac”) in his tort and breach of contract action regarding foreclosures upon two properties referred to as the “Windbell property” and the “Dalton Place property.” Siegel claims that the district court erred when it concluded that this action is barred by res judicata, and when it awarded Freddie Mac attorney’s fees incurred in defending the action.
 
 [1]
 
 We affirm both the district court’s grant of summary judgment and its award of attorney’s fees.
 

 BACKGROUND
 

 On November 22, 1989, Siegel and Gerber, his partner, executed and delivered a Multifamily note (the Windbell note) in which they promised to pay the J.I. Kislak Mortgage Corporation (Kislak) the principal sum of $840,000 in monthly installments. The note was secured by a Deed of Trust, Assignment of Rents and Security Agreements, and by a Collateral Assignment of Leases. On November 27,1989, Siegel and Gerber executed and delivered another Multifamily note (the Dalton Place note) in which they promised to pay Kislak the principal sum of $900,000. That note was also secured by a Multifamily Deed of Trust, Assignment of Rents and Security Agreements, and a Collateral Assignment of Leases. The rider to the Dalton Place deed of trust provided that the borrower could sell or transfer his interest in the property without acceleration of the entire debt provided that “the transferee’s creditworthiness and management ability are satisfactory to Lender and the transferee has executed ... a written assumption agreement.” Kislak subsequently sold and assigned the notes and deeds of trust to Freddie Mac.
 

 Siegel and Gerber experienced constant financial difficulty in maintaining the Dalton Place property. By the end of 1991, they attempted to sell the property. Two parties submitted offers — Andrew Hansen and Cunningham Capital Corporation. Freddie Mac determined that Hansen was an unacceptable buyer because of his lack of managerial experience, the condition of his other properties, and his limited financial resources. The second offer from Cunningham Capital Corpora
 
 *528
 
 tion was withdrawn before Freddie Mac acted on it.
 

 In December 1992, Siegel and Gerber defaulted on their obligations under the Wind-bell loan, and Freddie Mac foreclosed on that property. Seeking a deficiency judgment, Freddie Mae filed an action in federal district court in the Northern District of Texas. Pri- or to trial, Siegel declared bankruptcy. Sie-gel and Gerber also defaulted on the loan on the Dalton Place property.
 

 Freddie Mac filed two proofs of claim against Siegel in the bankruptcy proceeding. One related to the Windbell property and the other to the Dalton Place property. Siegel did not file objections to those proofs of claim. Nor did the bankruptcy trustee. In March 1994, the bankruptcy court granted Freddie Mac relief from the stay so that it could foreclose on the Dalton Place property. On June 10, 1994, Siegel was discharged from bankruptcy, and that matter was closed on June 30, 1994. On August 2, 1994, Freddie Mac foreclosed on the Dalton Place property.
 

 However, in April of 1994, Siegel and Gerber had already brought this action in the Superior Court of the State of California for the County of Los Angeles. Freddie Mac removed the action to the Federal District Court for the Central District of California in October, 1994. Freddie Mae then moved for summary judgment against Siegel on all claims because, it said, Siegel’s action was barred by the res judicata effect of the bankruptcy proceeding.
 
 [2]
 
 The district court granted Freddie Mac’s motion. After the district court granted the motion, Freddie Mac moved to recover attorney’s fees incurred in defending against Siegel’s claims. The district court granted that motion and denied Siegel’s subsequent motion for reconsideration. Siegel appealed.
 

 JURISDICTION AND STANDARD OF REVIEW
 

 The district court had jurisdiction pursuant to 12 U.S.C. § 1452(f). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 

 We review the district court’s grant of summary judgment de novo.
 
 See Trustees of Cal. State Univ. v. Riley,
 
 74 F.3d 960, 963 (9th Cir.1996). In reviewing a grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact and whether the district court correctly applied the relevant substantive law.
 
 See Covey v. Hollydale Mobilehome Estates,
 
 116 F.3d 830, 834 (9th Cir.),
 
 amended by
 
 125 F.3d 1281 (9th Cir.1997). The “preclusive effect of a prior judgment is a question of law subject to de novo review.”
 
 FDIC v. Jenson (In re Jenson),
 
 980 F.2d 1254, 1256 (9th Cir.1992). In general, we review a district court’s award of attorney’s fees for an abuse of discretion.
 
 See Wing v. Asarco Inc.,
 
 114 F.3d 986, 988 (9th Cir.1997). However, we decide whether the district court applied the correct legal standard de novo.
 
 See Velarde v. PACE Membership Warehouse, Inc.,
 
 105 F.3d 1313, 1318 (9th Cir.1997). And, we review any element of legal analysis and statutory interpretation, which figures in the district court’s decision regarding attorney’s fees, de novo.
 
 See Corder v. Gates,
 
 104 F.3d 247, 249 (9th Cir.1996).
 

 DISCUSSION
 

 A. Res Judicata
 

 When Freddie Mac filed its claims in bankruptcy either Siegel or the trustee could have raised objections. They did not. Instead, in this separate case Siegel attempted to attack Freddie Mac’s right to foreclose and its other actions under the contract. The district court declared that he was barred by res judicata. He dubs that error; we disagree.
 

 The “doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies.”
 
 Robertson v. Isomedix, Inc. (In re Intl. Nutronics),
 
 28 F.3d 965, 969 (9th Cir.1994). Thus, “‘[r]es judicata bars all grounds for recovery that
 
 could have been
 
 
 *529
 

 asserted,
 
 whether they were or not, in a prior suit between the same parties on the same cause of action.’ ”
 
 Id.
 
 (alteration in original) (citation omitted). That applies to matters decided in bankruptcy.
 
 See id.
 

 In
 
 United States v. Coast Wineries,
 
 131 F.2d 643, 648 (9th Cir.1942), we held that the allowance or disallowance of “a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.” As we said, it “ ‘may also be conceded that the allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a subsequent suit against the bankrupt or any one in privity with him.'’ ”
 
 Id.
 
 (citation omitted). Similarly, in
 
 In re Intl. Nutronics,
 
 28 F.3d at 969, we stated that where a “claim
 
 could have been asserted
 
 at the time of the proceeding confirming sale [in bankruptcy] ... this opportunity is sufficient to satisfy [the] requirements] of the doctrine of res judicata.” (Emphasis added).
 
 See also Trulis v. Barton,
 
 107 F.3d 685, 691 (9th Cir.1997) (“Since the plaintiffs never appealed the bankruptcy court’s confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court’s jurisdiction over the subject matter.”);
 
 Bank of Lafayette v. Baudoin (In re Baudoin),
 
 981 F.2d 736, 742 (5th Cir.1993) (finding that a bankruptcy order allowing a proof of claim is a final judgment to be given res judicata effect).
 

 In
 
 In re Intl. Nutronics,
 
 28 F.3d at 970, we had to decide whether a bankruptcy court’s earlier determination (confirmation of a sale) precluded the trustee in bankruptcy from bringing a subsequent antitrust action (based on alleged collusive bidding at the sale). We asked whether the same cause of action was involved and applied the following four-factor test:
 

 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
 

 Id.
 
 We see no reason not to apply that test here.
 

 Application of the test indicates that the district court correctly concluded that Sie-gel’s claims were barred by res judicata. Freddie Mac filed two proofs of claim (Wind-bell and Dalton Place) in Siegel’s bankruptcy proceeding. No objection was filed to the claims in the bankruptcy action.
 
 [3]
 
 Siegel’s present suit against Freddie Mac in contract and tort states a variety of causes of action all of which are premised on Freddie Mac’s failure to finance repair projects on the Windbell and Dalton Place properties, and its failure to approve the sale and transfer of the Dalton Place property. The gravamen is that Freddie Mac violated its duties under the notes and deeds of trust and, among other things, should not have been able to proceed against Siegel due to its own defaults and wrongdoing. Clearly, Freddie Mac’s right to recover on its proofs of claim in the bankruptcy court could have been attacked on that basis. Just as clearly, its rights established in the bankruptcy would be affected by resolution of the present action. Similarly, the present suit and the proofs of claim stem from the same nucleus of facts, and involve similar evidence, i.e., the loan documentation and the surrounding circumstances. Again, the interests at stake in both actions involve Freddie Mac’s right to recovery under the loan agreements. As such, the district court correctly concluded that res judicata bars Siegel’s claims in the present action.
 

 Siegel, however, argues that the proofs of claim filed by Freddie Mac are not final judgments giving rise to res judicata. Surely the claims themselves are not, but his argument ignores the fact that we have held that a bankruptcy court’s allowance or disal-lowance of a claim is a final judgment.
 
 See Coast Wineries,
 
 131 F.2d at 648. Similarly, other circuits have assumed that allowance of a proof of claim in a bankruptcy proceeding
 
 *530
 
 should be treated as a final judgment for res judicata purposes.
 
 See, e.g., In re Baudoin,
 
 981 F.2d at 742 (“[0]ur prior holdings ... establish that an order allowing a proof of claim is, likewise, a final judgment.”);
 
 Giles World Mktg., Inc. v. Boekamp Mfg., Inc.,
 
 787 F.2d 746, 747-48 (1st Cir.1986) (assuming in dicta that a valid proof of claim granted by the district court is a final judgment).
 

 We recognize that in the eases we have cited there has been an actual separate order of some kind regarding the claim in question. We have not found significant authority addressing the necessity for a separate order before res judicata can attach. One case has indicated that “the filing and subsequent allowance of a proof of claim is a final judgment” even if there is no formal order, but that ease has been reversed, albeit on other grounds.
 
 DePaolo v. United States (In re DePaolo),
 
 165 B.R. 491, 493 (D.Wyo.1994),
 
 rev’d on other grounds,
 
 45 F.3d 373 (10th Cir.1995);
 
 see also Colorado Livestock Prod. Credit Ass’n v. Schwab (In re Schwab),
 
 613 F.2d 1279, 1283 (5th Cir.1980). Still, the lack of a separate order is a distinction without a difference.
 

 “A claim ..., proof of which is filed under section 501 of this title [Title 11], is
 
 deemed allowed,
 
 unless a party in interest ... objects.” 11 U.S.C. § 502(a) (emphasis added). If there is an objection, the court must hold a hearing and then it “shall
 
 allow
 
 ” the claim to the extent proper. 11 U.S.C. § 502(b) (emphasis added). Of course, if the court formally actually allows the claim, there can be little doubt about the ultimate res judicata effect of that allowance. But it is equally clear that when a claim is “deemed allowed” it has the same effect. Consider: what else can “deemed allowed” mean? It must mean deemed allowed by the court. In other words, it is deemed that the court has acted on the claim and ordered allowance. Congress has relieved the court of the task of actually endorsing its allowance of the claim on that document or on a separate form of order. It has saved the court from that burdensome and almost ministerial task when no interested party demands it. It would be most peculiar if the effect was that uncontested and allowed claims had less dignity for res judicata purposes than a claim which at least one party in interest thought was invalid or contestable in whole or in part. We see no reason to embrace that rather peculiar result. Rather, we see § 502(a) as a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in all respects as a claim allowed by the court itself. In short, the validity of the claim has been determined on the merits, and attacks upon it that “could have been asserted” cannot be raised in later proceedings.
 
 In re Intl. Nutronics,
 
 28 F.3d at 969.
 

 We do, of course, recognize that the Fourth Circuit has expressed doubt about this form of analysis.
 
 See County Fuel Co., Inc. v. Equitable Bank Corp.,
 
 832 F.2d 290, 292 (4th Cir.1987). It has indicated that it considers it “doubtful that in strict contemplation” the concept of res judicata should be applied.
 
 Id.
 
 However, a number of things should be noted about the court’s opinion. Its doubts were expressed because at the time of deemed allowance that allowance was not truly “final” and could be contested at a later time.
 
 See id.
 
 But, the court also stated that its doubts extended to claims based on specific court orders allowing claims because they too could still be contested at a later time.
 
 See id.
 
 To that extent, the court’s analysis appears to disagree with the other cases we have already cited, and even those doubts should dissipate where, as here, the debtor has received his discharge and the bankruptcy has closed. By then any lingering doubts about finality would surely have been assuaged. Finally, in
 
 County Fuel,
 
 the court determined that, on the facts before it, the doctrine of waiver barred the subsequent action anyway. Those facts included a lift-stay proceeding, and a later proceeding at which the debtor objected to attorney’s fees and for those purposes conceded the validity of the claim, which had already been paid in full once the stay was lifted.
 
 See id.
 
 at 293. Siegel never made a concession, so part of the
 
 County Fuel
 
 analysis does not apply here. But, again,
 
 County Fuel
 
 did not actually decide the res judicata issue. It just expressed doubts, and it did not ultimately have to face the consequences of those
 
 *531
 
 doubts. ' Instead, it found a waiver with which to preclude an action that would basically nullify the previous determination that the creditor’s claim “was a valid one entitling it to immediate payment.”
 
 Id.
 
 at 294. While we understand the basis for the Fourth Circuit’s doubts, we, with all due respect, conclude that it is better to see the debtor’s attack for what it is — an attempt to undercut the order of a bankruptcy court, deemed or otherwise, which allowed a creditor’s claims and achieved finality for the debtor and the creditor by granting the former’s discharge and release and by barring the latter from further pursuit of the claims. Thus, the dis-. trict court did not err when it treated the bankruptcy court’s allowance of Freddie Mac’s claims as a final judgment.
 

 But, Siegel says, he should not be penalized by the bankruptcy trustee’s failure to pursue an action against Freddie Mac. This argument is without merit, and misunderstands the nature of the bankruptcy proceeding. Again, any party in interest can object.
 
 See
 
 11 U.S.C. § 502(a). Athough the trustee in Siegel’s bankruptcy could have objected to Freddie Mae’s proofs of claim, Siegel could have objected as well.
 
 See Lawrence v. Steinford Holding B.V. (In re Dominelli),
 
 820 F.2d 313, 316 (9th Cir.1987) (stating that under 11 U.S.C. § 502(a) a party in interest, including the trustee, can object to a proof of claim);
 
 see also IRS v. Taylor (In re Taylor),
 
 132 F.3d 256, 261 (5th Cir.1998) (“Once a proof of claim is filed, the debt is considered allowed unless the debtor or another party in interest files an objection to the proof of claim.”);
 
 FDIC v. Union Entities (In re BeMac Transp.),
 
 83 F.3d 1020, 1025 (8th Cir.1996) (“In order to disallow the claim, the debtor or another party in interest must object and request a determination of the hen’s validity.”); 4
 
 Collier on Bankruptcy
 
 ¶ 502.02[2][a]-[c] (1997) (the trustee may object but the debtor may also have standing). As it was, Siegel even had good reason to exert himself, if he wished to. The nature of his assertions and demands indicates that he could have benefitted, and could even have come out solidly solvent had he prevailed. In fact, he asserts that it was Freddie Mac that forced him into bankruptcy. Thus, its claims and his asserted defenses and counterclaims were the heart and soul of the bankruptcy. His failure to object and his choosing to file this action even before his bankruptcy closed was an interesting tactic by which he hoped to accomplish a discharge of his obligations to Freddie Mac (and others), while keeping his own claims against it. Interesting but ineffective. In fine, Siegel offers no persuasive reason why he should not be bound for res judicata purposes.
 

 B. Award of Attorney’s Fees to Freddie Mac
 

 Despite the fact that Freddie Mac’s rights under the notes and deeds of trust had been decided in the bankruptcy court and Freddie Mac’s claims had been discharged there, Siegel chose to sue on the theory that Freddie Mae had breached the deeds of trust’s promises. Unfortunately for him, the deeds of trust provide for attorney’s fees if the lender is pursuing its rights under them. There is no dispute that the provision was valid under state law and would apply here if the bankruptcy proceedings did not, somehow, affect it. For purposes of this action, it was not affected by those proceedings.
 

 In the first place, the mere fact that Siegel obtained a bankruptcy discharge did not eliminate the provision. That is, it cannot be said that the whole contract merged into that judgment. As the Supreme Court pointed out in
 
 Johnson v. Home State Bank,
 
 501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991), a discharge in bankruptcy “extinguishes
 
 only
 
 ‘the personal liability of the debtor.’ ” (Citation omitted). Thus, the Court found that a “creditor’s right to foreclose on the mortgage survives or passes through the bankruptcy.”
 
 Id.
 
 Similarly, as the Bankruptcy Appellate Panel has held, a discharge in bankruptcy does not end a party’s obligation, but merely prevents one method of collection.
 
 See Cortez v. American Wheel, Inc. (In re Cortez),
 
 191 B.R. 174, 178 (9th Cir. BAP 1995);
 
 see also Hall v. National Gypsum Co.,
 
 105 F.3d 225, 229 (5th Cir.1997). Thus, Siegel’s discharge in bankruptcy did not extinguish the contractual attorney’s fee provision. The provision itself may have fallen dormant, but it was revivisci-ble.
 

 
 *532
 
 But, Siegel argues, the bankruptcy court’s June 10, 1994, discharge of his obligations must have included Freddie Mac’s claim for attorney fees. Under 11 U.S.C. § 727(b), a debtor is discharged “from all debts that arose before the date of the order for relief under [Chapter 7].” Thus, whether Freddie Mae’s claim for attorney’s fees was discharged in bankruptcy will depend on when the attorney’s fee debt arose.
 
 See California Dep’t of Health Servs. v. Jensen (In re Jensen),
 
 995 F.2d 925, 929 (9th Cir.1993) (suggesting that inquiry regarding whether debt is discharged depends on when claim arose);
 
 In re Rosteck,
 
 899 F.2d 694, 696 (7th Cir.1990) (“The answer to [the discharge] question depends upon when the ... debt arose.”). Both parties agree that the contract provision for attorney’s fees was executed prior to Siegel’s filing bankruptcy. Similarly, the parties do not dispute that for our purposes Siegel’s acts which gave rise to Freddie Mac’s award occurred post-discharge.
 

 The question of when a debt arises under the bankruptcy code is governed by federal law.
 
 See In re Jensen,
 
 995 F.2d at 930 n. 5 (“ ‘The determination of when a claim arises for purposes of bankruptcy law should be a matter of federal bankruptcy law____’ ”);
 
 Corman v. Morgan (In re Morgan),
 
 197 B.R. 892, 896 (N.D.Cal.1996) (finding that determination of when a claim arises under the bankruptcy code should be governed by federal law),
 
 aff'd,
 
 131 F.3d 147 (9th Cir.1997);
 
 Cohen v. North Park Parkside Community Ass’n (In re Cohen),
 
 122 B.R. 755, 757 (Bankr.S.D.Cal.1991) (“However, federal bankruptcy law, rather than California state law, governs when a debt arises for purposes of determining dischargeability.”);
 
 see also Employees’ Retirement Sys. v. Osborne (In re THC),
 
 686 F.2d 799, 803-04 (9th Cir.1982) (applying federal law to determine when parties had obligations under indemnification agreement). The Code defines a debt as “liability on a claim.” 11 U.S.C. § 101(12). The term debt “is therefore coextensive with [the definition of a] ‘claim’.”
 
 Daghighfekr v. Mekhail (In re Daghighfekr),
 
 161 B.R. 685, 687 (9th Cir. BAP 1993).
 

 Pursuant to section 101(5)(A), a claim is a “right to payment, whether or not such right is reduced to judgment, liquidated, unliqui-dated, fixed,
 
 contingent,
 
 matured, unma-tured, disputed, undisputed, legal, equitable, secured or unsecured.” (emphasis added). “This ‘broadest possible definition’ of ‘claim’ is designed to ensure that ‘all legal obligations of the debtor,
 
 no matter how remote or contingent,
 
 will be able to be dealt with in the bankruptcy case.’”
 
 In re Jensen,
 
 995 F.2d at 929 (quoting H.R.Rep. No. 95-595, at 309 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95-598, at 22 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5808) (alteration in original). Thus, we must ask whether the claim for attorney’s fees was contingent and therefore discharged in its entirety. We think not.
 

 A contingent claim is “ ‘one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.’ ”
 
 Fostvedt v. Dow (In re Fostvedt),
 
 823 F.2d 305, 306 (9th Cir.1987);
 
 see also In re Dill,
 
 30 B.R. 546, 548 (9th Cir. BAP 1983),
 
 aff'd,
 
 731 F.2d 629 (9th Cir.1984) (defining contingent claim as “a claim that has not accrued and which is dependent upon a future event”). Any doubts regarding the dischargeability of a claim “should be resolved in favor of finding that a contingent claim existed.”
 
 In re THC,
 
 686 F.2d at 802. Siegel asks us to read those principles in an unreflective way, and to decide that the attorney’s fee provision was contingent because it could not take effect unless Siegel did something. No doubt the future is always contingent, but that does not mean that a bankrupt is discharged regarding everything he might do in the future. None of our authorities are to the contrary. Not surprisingly, an unreflec-tive reading is the wrong reading.
 

 In
 
 In re THC,
 
 686 F.2d at 803-04, we did hold that a contractual claim for indemnification based on events that occurred post-petition was provable in bankruptcy because the contractual provision was a contingent claim entered pre-petition. As such, the plaintiffs claim for indemnification, which was wholly contingent and unmatured
 
 *533
 
 at the time when creditors could file proofs of claim, was time barred.
 
 See id.
 
 at 801. In reaching that conclusion, we accepted the bankruptcy court’s rationale that the creditor’s claim arose when the indemnification agreement was executed, not when the contingency took place.
 
 See id.
 
 at 802. Similarly, in
 
 Christian Life Ctr. Litig. Defense Comm. v. Silva (In re Christian Life),
 
 821 F.2d 1370, 1374 (9th Cir.1987), we denied an attorney’s fee claim for legal fees as an administrative expense in a bankruptcy proceeding. Administrative expenses are given priority in bankruptcy “ ‘in order to secure goods and services necessary to an orderly and economical administration of the estate after the petition is filed.’”
 
 Id.
 
 at 1373 (citation omitted). Thus, “[c]laims that arise from a creditor’s pre-petition services to the debtor are not entitled to administrative expense treatment.”
 
 Id.
 
 at 1373-74. Although the legal fees expended in defending a corporate officer in
 
 In re Christian Life
 
 were actually incurred post-petition, we held that the claim arose pre-petition because the corporation’s obligation to indemnify the officer arose from prerpetition services, i.e., it was a form of compensation.
 
 See id.
 
 at 1374. In reaching that conclusion, we emphasized that “[i]t makes no difference that the duty to indemnify [the officer] for litigation expenses ... did not accrue until after the petition was filed when [the officer] incurred those expenses; the critical fact is that the claim for indemnity arose from pre-petition services [the officer] provided the corporation.”
 
 Id.
 

 Those cases did not specifically deal with attorney’s fees provisions in a contract, but there is nothing about attorney’s fees provisions that would render them unprovable. We have held as much.
 
 See, e.g., Highlands Ins. Co. v. Bozzo (In re Bozzo),
 
 693 F.2d 90, 92 (9th Cir.1982);
 
 Toys “R” Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.),
 
 645 F.2d 794, 798 (9th Cir.1981);
 
 Hartman v. Utley,
 
 335 F.2d 558, 559 (9th Cir.1964). But
 
 In re THC
 
 and
 
 In re Christian Life
 
 did deal with situations where the possibility of a claim against the debtor was fixed and entirely out of his hands before he entered bankruptcy. In other words, he had a possible liability, and whether actual liability would attach to him was contingent upon what others might do. Were he not discharged, that very real threat would stay with him and remain a millstone around his economic neck as he attempted a fresh start. The very purpose of bankruptcy proceedings would be cut away. Indeed, a person with enormous possible indemnification liability could never effectively obtain a fresh start. That is decidedly not a proper result, but it is also not the case at hand.
 

 This is a case where the debtor, Siegel, had been freed from the untoward effects of contracts he had entered into. Freddie Mac could not pursue him further, nor could anyone else. He, however, chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him.
 

 Other courts, which have considered the issue have reached the same conclusion. Thus, in
 
 Shure v. Vermont (In re SureSnap),
 
 983 F.2d 1015, 1018 (11th Cir.1993), the debtor chose to sue on an agreement which provided for attorney’s fees, and then sought to avoid the effect of that provision. The court said:
 

 The confirmation of Sure-Snap’s Chapter 11 plan
 
 discharged
 
 its
 
 pre-confirmation
 
 liabilities
 
 under the Agreement.
 
 The attorney fees Bradford seeks were incurred by Bradford in defending a
 
 post-confirmation
 
 appeal initiated by Sure-Snap. Sure-Snap voluntarily continued to litigate the validity of the Agreement after confirmation of its Chapter 11 plan. Bradford had no choice but to defend. By choosing to appeal the validity of the Agreement after confirmation, Sure-Snap did so at the risk of incurring post-confirmation costs involved in its acts. “[Bjankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts.”
 

 Id.
 
 at 1018 (citation omitted);
 
 see also Irmas Family Trust v. Madden (In re Madden),
 
 185 B.R. 815, 819 (9th Cir. BAP 1995);
 
 Danzig Claimants v. Grynberg (In re Grynberg),
 
 113 B.R. 709, 713 (Bkrtcy.D.Colo.1990),
 
 aff'd,
 
 966 F.2d 570 (10th Cir.1992);
 
 In re Hadden,
 
 57 B.R. 187, 190 (Bankr.W.D.Wis.1986). In
 
 *534
 
 fine, Siegel’s decision to pursue a whole new course of litigation made him subject to the strictures of the attorney’s fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney’s fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences. Thus, we affirm the district court’s award of attorney’s fees in favor of Freddie Mac.
 

 Freddie Mac is also entitled to attorney’s fees on appeal pursuant to the underlying deeds of trust. We will remand to the district court for further proceedings on this issue.
 
 See
 
 9th Cir. Rule 39-1.8.
 

 CONCLUSION
 

 Not entirely unlike Dr. Pangloss,
 
 [4]
 
 Siegel thought that for him this
 
 was
 
 the best of all possible worlds. He thought that he could use bankruptcy to discharge all of his obligations under his contracts with Freddie Mac and still personally retain all of his rights arising out of those contracts. That picture of the world was a mere eidolon. Any claims Siegel might have had against Freddie Mac came to an end when its claim in Siegel’s bankruptcy went unchallenged and became recognized. And any right to avoid the attorney’s fees provision of his contract fell short of protecting him when he voluntarily undertook this post-bankruptcy action against Freddie Mac.
 

 AFFIRMED and REMANDED.
 

 [1]
 

 . Selwyn Gerber also appealed. We dispose of the issues raised by him in a separate memorandum disposition,
 

 [2]
 

 . It asserted other grounds also, which we need not consider here.
 

 [3]
 

 . Similarly, no objection was filed to Freddie Mac's motion for relief from the automatic stay so that it could foreclose on the Dalton Place property.
 

 [4]
 

 .
 
 See
 
 Voltaire,
 
 Candide
 
 (W.W. Norton & Co. 1966).