**In re Timothy Ray WRIGHT, Debtor.**

No. 2:09–bk–32244–SSC.

United States Bankruptcy Court, D. Arizona.

Signed March 31, 2014.

Daniel E. Garrison, Fay Marie Waldo, Andante Law Group of Daniel E. Garrison, Scottsdale, AZ, Howard C. Meyers, Burch & Cracciolo, Phoenix, AZ, for Debtor.

Renee Sandler Shamblin, Office of the U.S. Trustee, Phoenix, AZ, for U.S. Trustee.

## DECISION ON DISCHARGEABILITY OF POST–CONFIRMATION DEBT

SARAH SHARER CURLEY,
Bankruptcy Judge.

## I. INTRODUCTION

This matter comes before the Court on a "Motion for Order Establishing that Coun-try Mutual's Claim for Post–Effective Date Attorneys' Fees is Not Subject to Being Discharged Under Debtor's Plan" (the "Motion") filed on October 31, 2013 by Country Mutual Insurance Company ("Country"). Timothy Ray Wright ("Debt-or" or "Wright") filed a Response on No-vember 18, 2013, and Country filed a Re-ply on November 27, 2013. The Court held a hearing on the matter on December 3, 2013, and took the matter under advise-ment at that time.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has ju-risdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2013).

## II. FACTUAL BACKGROUND

The Debtor filed his Chapter 11 petition on December 14, 2009. Prior to the peti-tion date, on or about January 23, 2009, Wright filed a lawsuit against Country and others in the Maricopa County Superior Court, CV2009–002285 (the "State Court Lawsuit"), arising out of claims for dam-ages and a turnover of insurance proceeds under Policy No. A02K6384937 for damage resulting from a fire on January 25, 2008, at the residence located at 9121 N. 69th Street, Paradise Valley.

On May 21, 2010, Country filed its origi-nal Proof of Claim ("POC") with this Court, asserting a claim for attorneys' fees and costs incurred in the State Court Law-suit in the amount of $28,41.69.[1] Country filed an amended Proof of Claim ("Amend-

---

1. See Proof of Claim 103–1 filed on May 21, 2010. The claim was for fees and costs in-curred through April 30, 2010.

ed POC") in the amount of $104,992.09 on November 3, 2011, revising its claim for attorneys' fees and costs incurred, and continuing to incur, in the State Court Lawsuit.[2] Country's claim was contingent on Country prevailing in the State Court Lawsuit, and obtaining an order or judgment from the state court awarding Country its attorneys' fees and costs. An attachment to both the POC and Amended POC states, in pertinent part, as follows: "By filing this claim Country is not waiving and hereby reserves any and all rights, remedies and arguments it may have that any fees and costs incurred post-petition are not subject to discharge. See, e.g., *In re Ybarra*, 424 F.3d 1018 (9th Cir.2005)." [3]

The Debtor filed an Objection to Country's claim on January 25, 2012, and Country filed a Response on February 8, 2012. Thereafter the parties filed a Stipulation resolving the Debtor's objection to Country's proof of claim on March 16, 2012.[4] The Stipulation was approved by the Court on April 12, 2012.[5] The relevant portion of the Stipulation, for purposes of this dispute, provides as follows:

*C. The Claim For Post–Confirmation Fees And Costs*

15. Country asserts that any award it obtains for attorneys' fees and costs it incurs following the Effective Date (the "Post–Confirmation Fee Award") should not be included as part of its Remaining Fee Award and treated as an Allowed Class 3 General Unsecured Claim, but instead is a post-bankruptcy claim that is not subject to discharge under the Plan, and it shall be fully due and owing from Debtor over and above any payments to be made under the Plan. Debt-

or asserts that any such Post–Confirmation Fee Award should be included as part of Country's Remaining Fee Award and treated accordingly.

16. For purposes of this Stipulation, the parties agree that this issue will not be decided unless and until the a Post–Confirmation Fee Award is entered in the State Court Litigation, and further agree that (i) Country reserves all rights, claims and arguments it has that any such Post–Confirmation Fee Award is not subject to discharge under the Plan, and (ii) Debtor reserves all rights, claims and arguments that any such Post–Confirmation Fee Award is subject to discharge under the Plan.

17. If there is a Post–Confirmation Fee Award, and Wright prevails on its argument that such Award is subject to discharge, then the parties agree that (i) the Award shall be treated and paid as part of Country's Allowed Class 3 General Unsecured Claim discussed above, and (ii) if the existing Unsecured Retained Funds are not sufficient to cover this additional Award, then Wright shall recalculate the pro rata shares due to the holders of Allowed Class 3 Claims and shall first pay a "make-up" payment to Country at the next Quarterly Distribution prior to making payment to the other holders of Allowed Class 3 Claims in an amount necessary to pay Country its pro rata share for said Post–Confirmation Fee Award.[6]

The Court entered an order confirming the Debtor's Plan of Reorganization on May 17, 2012. The Plan's Effective Date was June 1, 2012 (the "Effective Date").

---

2. See Proof of Claim 103–2 filed on November 3, 2011. The claim was for fees and costs incurred through October 31, 2011.

3. See Proofs of Claim 103–1 and 103–2.

4. See Docket Entry No. 1719.

5. See Docket Entry No. 1744.

6. See Docket Entry No. 1719, pp. 6–7.

The parties continued to litigate the State Court Lawsuit during the course of these bankruptcy proceedings. On June 24, 2013, the state court entered a judgment in favor of Country and against Wright, awarding Country (among other things), Country's attorneys' fees and costs up through June 1, 2012 (the Plan's Effective Date) in the amount of $139,570.03 ($133,-459.60 in fees and $6,110.43 in costs), and awarding Country its attorneys' fees and costs from and after the Effective Date (the "Post–Confirmation Fee Award") in the amount of $145,545.26 ($134,558 in fees and $10,987.26 in costs).[7] The parties agree that the issue to be addressed is whether the Post–Confirmation Fee Award is subject to being discharged in this case.

### III. DISCUSSION

Country argues that the March 16, 2012 Stipulation between the parties specifically left open the issue of whether any post-confirmation fees and costs awarded to Country in the State Court Lawsuit would be subject to discharge in the bankruptcy case. Country requests that the Court enter an order holding that the post-effective date fees and costs are not subject to discharge. According to Country, Wright chose to pursue his claims against Country following the confirmation of the Plan, and is, therefore, personally responsible for the Post–Confirmation Fee Award (fees and costs incurred by Country after the Plan's Effective Date).

The Debtor makes two arguments. First, Wright argues that the motion is time-barred because Country failed to file an objection to the Debtor's discharge by the November 29, 2011 deadline set forth in the Court Order dated October 13, 2011.[8] According to Wright, as of the Stipulation between the parties, Country had already missed the deadline and had lost its right to object to the dischargeability of the post-effective-date fees and costs. During oral argument, counsel for the Debtor conflated the argument as to whether the Debtor should receive a discharge with an argument that Country's debt should not be excepted from discharge under 11 U.S.C. § 523 (West 2013). Therefore, the Court will analyze both positions in analyzing whether Country's Motion is time-barred. Second, Wright argues that the State Court Lawsuit was still property of the estate, the Debtor had a fiduciary duty to pursue the asset on behalf of the estate, and any recovery would have gone to the estate and its creditors. Therefore, Wright argues that it makes more sense to rely on cases where a trustee or other representative of the estate was the litigating party, rather than a debtor seeking personal gain.

### A. Is Country's Motion Time–Barred?

█ The Motion is not time-barred. In this case, Country is not seeking to deny Wright a discharge, nor is Country seeking an order excepting the attorney's fees and costs from discharge under Bankruptcy Code Section 523. Rather, Country is seeking a finding that the Post–Confirmation Fee Award, that is contained in the state court judgment and rendered after the Effective Date of Wright's Plan, does not constitute a pre-petition or pre-confirmation claim that may be discharged as a part of Wright's Plan.

---

7. See Docket Entry No. 2041; Exhibit A.

8. In this case, the Court signed an order on October 13, 2011 (Docket Entry No. 1496) setting, *inter alia*, solicitation procedures, proof of claim bar dates, the date and time for the confirmation hearing, and the date of November 29, 2011 as the deadline for anyone wishing to object to the Debtor's discharge.

Section 1141(d)(1) of the Bankruptcy Code provides that "[e]xcept as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—(A) discharges the debtor from any debt that arose before the date of such confirmation. . . ." However, Country argues that the Court must analyze when its debt arose. If it does, the Court will conclude that said Fee Award does not fall within the parameters of Section 1141(d)(1). In turn, Section 523 states that an individual debtor shall not be discharged of certain enumerated debts or debts based upon certain types of fraudulent or similar conduct. However, this Section also requires a determination as to when the subject debt arose. Thus, to a certain extent, the Court must determine when the subject debt arose to be sure that Country has not missed a deadline for determining the dischargeability of its Award.

There is, however, a separate basis to conclude that Country's Motion is not time-barred. The parties entered into a Stipulation preserving their respective rights as to whether Country had a pre-petition or pre-confirmation debt concerning certain attorneys' fees and costs that were incurred in the State Court Lawsuit. Country does not argue that its debt is based on fraud or other proscribed conduct, nor does Country argue that its debt is the type of enumerated debt, such as child support or taxes, that would be excepted from discharge under Section 523. Therefore, the bar-date under Section 523 cannot apply to this dispute. Country does not argue that Wright should be denied a discharge for improper actions pursuant to Section 1141(d)(2). In fact, Country has consistently stated that it does not object to Wright receiving a discharge under Section 1141(d). Rather, Country seeks a final determination as to when a certain portion of its debt arose. Such a determination is not within the parameters of an objection to a debtor's discharge and, thus, cannot be subject to being time-barred. Therefore, the Court concludes that Country's Motion is not time-barred.

## B. Is the Post–Confirmation Award Subject to Discharge?

■ The parties agree that there are no controlling Ninth Circuit decisions that are directly on point. However, there are several decisions that assist the Court in its analysis of the issues presented herein.

In the decision of *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 534 (9th Cir.1998), Siegel and Gerber, his partner, executed two promissory notes that were secured by two deeds of trust and other collateral on separate parcels of real property. Siegel and Gerber experienced financial problems, and attempted to sell one of the properties. They subsequently defaulted on the obligations, and the creditor foreclosed on the property. When the creditor sought a deficiency judgment in the federal district court, Siegel filed a Chapter 7 bankruptcy petition. The creditor subsequently filed two proofs of claim, one for each property, since Siegel had by then defaulted on the obligation as to the second property. Neither Siegel nor the trustee filed an objection to the proofs of claim. In March of 1994, the creditor moved for relief from the automatic stay to proceed with foreclosure of the second property, and the Court granted the relief requested. In relatively quick succession, on June 10, 1994, Siegel received his discharge, and on June 30, 1994, the case was closed. On August 2, 1994, the creditor foreclosed on the second property.

In April of 1994, while Siegel's Chapter 7 case was pending, Siegel and Gerber commenced an action in the Superior Court of the State of California, alleging

that the creditor had breached the contract and engaged in tortious conduct concerning the foreclosure of the two properties. The creditor removed the action to the Federal District Court in the Central District of California where Siegel's bankruptcy was then pending. Subsequently, the Federal District Court granted the creditor's motion for summary judgment based upon Siegel's actions being barred by the *res judicta* effect of the bankruptcy proceedings. After the motion was granted, the creditor moved to recover its attorneys' fees.

The Ninth Circuit discussed the "interesting, but ineffective" tactic of Siegel. *Id.* at 531. Siegel never objected to the creditor's proofs of claim, when doing so would have rendered Siegel solvent if he were successful. Rather, Siegel chose to file his separate action against the creditor even before Siegel's case was closed. The Ninth Circuit described his tactics as discharging his obligations to the creditor, "while keeping his own claims against it." *Id.*

As to the creditor's request for attorneys' fees, the deeds of trust provided for their recovery, if the lender pursued rights thereunder. The bankruptcy proceedings did not alter, amend, or vitiate such a valid contractual provision. Siegel's discharge only extinguished his personal liability. *Id.* As to Siegel's personal liability, he was discharged from all debts that arose before the filing of his Chapter 7 petition. Thus, the Ninth Circuit concluded that the issue could be resolved if it determined *when* the attorneys' fee debt arose. *Id.* at 532. The parties agreed that Siegel executed the relevant loan documents prior to when he filed his bankruptcy petition, but Siegel's act or conduct that gave rise to the creditor's attorneys' fee award occurred post-discharge.

The question of when the debt arises under the Bankruptcy Code is governed by federal law. The Bankruptcy Code defines a debt as a "liability on a claim." 11 U.S.C. § 101(12)(West 2013). The term debt "is therefore coextensive with [the definition of a] 'claim.'" *Id.* at 532 *citing In re Daghighfekr,* 161 B.R. 685 (9th Cir. BAP 1993). 11 U.S.C. § 101(5)(A)(West 2013) defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured: or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." This broad definition of claim ensures that all legal obligations of the debtor, "no matter how remote or contingent," will be dealt with in the bankruptcy proceedings. 143 F.3d at 532.

The Ninth Circuit concluded that the discharge had freed Siegel from the "untoward effects of contracts he had entered into." Unlike a corporation's obligations to indemnify an officer for attorneys' fees that was a form of compensation set forth in a pre-petition contract that did not accrue until the officer incurred the attorneys' fees post-petition, Siegel did not need to wait to determine what others might do as to whether any actual liability attached to Siegel. Rather, Siegel "choose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." *Id.* at 533.

Since the attorneys' fees awarded pursuant to a contract are considered a part of the contract and may be discharged at the

time a debtor receives a discharge, the Ninth Circuit drew a bright-line distinction as to a debtor's liability for "past acts," including attorneys' fees related to those past acts, and the new litigation pursued by a debtor and the attendant liability that may arise therefrom not being discharged. The Ninth Circuit summed up the distinctions as follows:

Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences. Thus, we affirm the district court's award of attorney's fees in favor of [the creditor].

*Id.* at 534. Thus, Siegel was responsible for the attorneys' fees under the contract.

The decision of *In re Ybarra* reached the same result on similar facts. The chapter 7 trustee negotiated a settlement with the creditor, a creditor which the debtor had sued prepetition. Subsequently, the Bankruptcy Appellate Panel reversed the bankruptcy court's decision that the cause of action was not exempt, so the debtor was then given the choice of either accepting the settlement that the trustee had negotiated or taking ownership of the lawsuit. The debtor chose the latter, and incurred $456,884.03 in attorneys' fees. Following the decision of *In re Siegel*, the Ninth Circuit held that "post-petition attorney fee awards [were] not discharged where post-petition, the debtor voluntarily 'pursue[d] a whole new course of litigation,'

commenced litigation, or 'return[ed] to the fray' voluntarily." *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir.2005). See also *In re Lees*, 2–03–06143 PHXCGC, 2007 WL 1992127 (Bankr.D.Ariz. July 5, 2007) (holding that attorneys' fees were not discharged where chapter 7 debtor continued litigation post-petition.)

Although chapter 7 cases, the decisions of *Ybarra* and *Siegel* cite to *In re Sure–Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir.1993), which was a chapter 11 case. In *Sure–Snap*, the Eleventh Circuit held that confirmation of a debtor-mortgagor's Chapter 11 plan did not discharge the debtor of a contractual attorneys' fee obligation incurred post-confirmation as result of its appeal from a pre-confirmation order upholding the validity of a mortgage agreement. *Id.* In another decision, *Nukote Int'l, Inc. v. Office Depot, Inc.*, 09–82363–CIV, 2011 WL 2784565 (S.D.Fla. July 14, 2011), the debtor/plaintiff had commenced a pre-petition a state court case and later filed a chapter 11 petition. The debtor had sued Office Depot for breach of contract, misrepresentation and several claims under the Bankruptcy Code. Again, presumably any recovery would have benefitted the unsecured creditors. However, the court concluded, as did the *Sure–Snap* court, that the confirmation of the debtor's chapter 11 plan discharged the debtor from its pre-confirmation liabilities only. Thus, with little discussion, the court concluded that the debtor was personally liable for post-confirmation fees and costs. *Id.*

Wright relies primarily on the decision of *In re SNTL Corp.*, 571 F.3d 826 (9th Cir.2009) in support of his position.[9] Ac-

9. The Debtor also cites to the decision of *In re Clarkson*, 377 B.R. 283 (Bankr.W.D.Wash. 2007) in support of his position. However, the court, in *dicta* and without analysis, simply concluded that where a trustee pursues claims on behalf of the estate, the state court judge could not impose personal liability on the debtor, and the creditor would be limited to a claim solely against the bankruptcy estate for any post-petition attorneys' fees and costs.

cording to the Debtor, in the *SNTL* case, the Ninth Circuit held that a post-petition attorneys' fee award based on an attorneys' fee provision in a pre-petition contract was likewise considered pre-petition in nature. Country argues that *SNTL* is irrelevant, because the issue before the *SNTL* court is not the same issue before this Court. In *SNTL* the issue addressed by the court was whether Sections 502 and 506 prohibited an unsecured creditor from claiming post-petition attorneys' fees.

The Ninth Circuit affirmed the Bankruptcy Appellate Panel decision of *In re SNTL Corp.*, 380 B.R. 204 (9th Cir. BAP 2007) and adopted the Panel opinion as the opinion of the Circuit. SNTL Corporation and its affiliates filed Chapter 11 petitions on April 26, 2000. SNTL confirmed its plan of reorganization, became SNIG pursuant to said plan, a litigation trust was formed, and a litigation trustee ("Trustee") was appointed. The Centre Insurance Company ("Centre") had filed a proof of claim in excess of $294,488,911, including $3 million in attorneys' fees, but not including contingent and unliquidated amounts. In March 2005, Centre filed an amended proof of claim. The Trustee objected to the proof of claim and its amendment. The Trustee asserted that Centre had released its claims against SNIG prepetition, that the released claims could not be revised post-petition, and that Centre could not include attorneys' fees incurred post-petition. *Id.* at 830.

The Panel determined that at least a portion of Centre's claim was not released pre-petition, because when Centre returned a preferential payment, the liability of SNIG's predecessor, SNTL, was revived. *Id.* at 834–838. Under Section 502(b)(1), a claim is not allowable if it is

unenforceable "for a reason other than because such claim is contingent or unmatured." *Id.* at 838. Centre had a contingent claim, but the contingency was removed post-petition. The removal of the contingency, however, did not result in the disallowance of the claim. *Id.*

The Panel next considered whether attorneys' fees and costs would be awarded to Centre although they were incurred post-petition. The Panel stated that the United States Supreme Court did not resolve the issue in *Travelers*, but simply remanded the matter to the Ninth Circuit. *Travelers Cas. and Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). The Panel first discussed the interplay between Section 502, the disallowance of claims, and Section 506, the treatment of secured claims. The Panel concluded that Section 506 does not bar attorneys' fees for all but over-secured creditors. If Congress intended such a result, it would have so stated in Section 502. *Id.* at 841–842.

The Panel then considered the date the claim arose and whether that should include attorneys' fees that were incurred post-petition. However, the Panel's focus was on Section 502(b)(1) and the statement that the court shall consider the claim "as of the date of the filing of the petition." The Panel stated that the parties execution of the prepetition agreement gave rise to a contingent, unliquidated attorney-fee claim. So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred post-petition did not preclude recovery as part of an allowable pre-petition claim for the fees. *Id.* at 843.

However, this Court is considering how to treat a post-confirmation claim, not a post-

petition claim

However, the cases upon which the Debtor relies do not apply to the discrete issue presented to this Court. Certainly in a Chapter 7 case, once the debtor receives a discharge and the case is closed, any property that is scheduled by the debtor, but not otherwise administered in the case, is returned or abandoned to the debtor. 11 U.S.C. § 554(c)(West 2013). Once the property is abandoned to the debtor, and the debtor pursues some type of recovery on the claim, the debtor does so at her own risk. In a Chapter 11 proceeding, the analysis is different, but similar. A Chapter 11 corporate debtor may propose and confirm a plan and receive a discharge upon confirmation of the plan. 11 U.S.C. § 1141(d)(1) (West 2013). Property is returned to the debtor, and the property dealt with in the plan is "free and clear of all claims and interests of creditors ..." 11 U.S.C. § 1141(c)(West 2013). As a result, the type of analysis set forth in *Siegel* is applicable to the corporate debtor, since the discharge is entered at the time of confirmation, and any action taken subsequently by the corporate debtor is at the risk of that debtor.

An individual debtor poses a more nuanced approach. The individual debtor does not receive a discharge upon confirmation of the plan. 11 U.S.C. § 1141(d)(5)(West 2013). In this case, Wright did not receive a discharge upon confirmation of his Plan. The State Court Lawsuit also remained an asset of the bankruptcy estate post-confirmation. However, as discussed in more detail hereinafter, without full disclosure of the risks associated with the State Court Lawsuit to his creditors, Wright chose to pursue his claims, because he would receive a substantial benefit for himself, with little or no benefit for his unsecured creditors.[10]

In this case, the Court's order confirming his Plan states that the Reorganized Debtor "shall retain and may (but shall not be required to) investigate and prosecute all of the Debtor's claims and causes of action." See Confirmation Order, DE 1787, Paragraph 37, Page 6, Lines 25–28. The Order also bifurcates the Country claim into two separate types of Reserved–For Claims: one, a general, unsecured claim; the other, an administrative expense.[11] At oral argument, the Court stated that the pre-petition and administrative expense components of Country's claim were specifically addressed in the Confirmation Order. The Court now concludes that by not addressing the post-confirmation award of attorneys' fees and costs to Country, the Debtor determined, at the point of confirmation, to pursue the litigation at his own risk, and any attorneys' fees and costs incurred by him post-confirmation would be his sole personal liability not subject to a discharge in his case.

During oral argument, the Court also reviewed the Disclosure Statement to the Fourth Amended Plan of Reorganization of the Debtor and discussed it with the parties. Of concern to the Court was the lack of disclosure to the creditors and interested parties of the risks associated

---

10. Indeed the Court that has presided over the case for many years did not fully appreciate the risks undertaken by Wright for his own benefit until oral argument on this matter.

11. The general, unsecured claim was in the amount of $90,817.80 and reserved for as contingent upon prevailing in the State Court Lawsuit. The other claim was designated as an administrative expense in the amount of $30,000 reserved for as contingent upon Country prevailing in the State Court Lawsuit and receiving an attorneys' fee award predicated upon the Lawsuit having been frivolous, meritless, or filed in bad faith by the Debtor. Stipulation at Docket Entry No. 1719, ordered approved at Docket Entry No. 1744. See Confirmation Order, p. 8, lns. 1–8.

with the State Court Lawsuit. Wright emphasized the potential recovery for the estate, but there was no analysis of any risks involved.[12] The Court learned that counsel retained by Wright to pursue the State Court Lawsuit withdrew prior to confirmation, and it was unclear if newly retained counsel or prior counsel had done any risk analysis of the State Court Lawsuit. It is still unclear as to whether Wright withheld critical information as to the risks attendant to the State Court Lawsuit. Moreover, when the Court analyzed what was disclosed, Wright appeared to be the only one to gain a real benefit. If Wright reduced Country's claim, or recovered from Country in the State Court Lawsuit, Wright would be able to retain the real property that was the subject of the dispute, but it would still be encumbered by the valid liens of secured creditors. Wright would be able to use the proceeds recovered from the State Court Lawsuit, if he won, to rebuild the home, but he would really be the only to benefit from such a result.[13] Wright also had the power, under his Plan, to decide which claims to pursue. In deciding post-confirmation to pursue Country in the State Court Lawsuit, he assumed the risk of personally paying for any attorneys' fees or costs that he might incur. Country's post-confirmation attorneys' fees and costs, not provided for, or described, in the (1) Plan, (2) Disclosure Statement, or Confirmation Order, became his responsibility and were not subject to being discharged in his case.

Post-confirmation litigation is unique. As noted previously, the Court and the parties are unable to locate any decision that decides the issue in the context of the chapter 11 case filed by an individual. An objective review of the litigation is necessary to determine when the liability that is incurred post-confirmation actually arises. Given the facts of this case, the Court concludes that the Debtor must be responsible for the Post–Confirmation Award. The Award shall not be subject to a discharge, and shall remain the sole liability of Wright.

C. Whether the State Court Lawsuit as Property of the Estate, Wright's Fiduciary Duties to Pursue Said Asset, and Wright's Attempt to Recover said Asset for the Estate Have Any Relevance in Determining the Issues Before the Court?

Although Wright argues that certain issues as to whether the Post–Confirmation Award is property of the estate and whether Wright's fiduciary duties to recover the Award as property of the estate are relevant to the Court's decision, the Court disagrees. The Court concludes that the critical issue is when the Post–Confirmation Award arose: pre-petition, post-petition, or post-confirmation. The Court has answered that question: post-confirmation. As such, the Debtor is personally responsible for the Award, and the Post–Confirma-

---

**12.** For instance, the Debtor argued that he had a potential claim for, *inter alia,* the cost of restoring the residence in the amount of $747,942.18, a claim for loss of personal property in the amount of $92,938.86, a claim for loss of an "additional living expense benefit" for 14 months of $210,000, plus $15,000 per month for each additional month presumably the claim was unpaid, a claim for the retention of a public adjuster in an unspecified amount, and a claim for landscaping in the amount of $8,500. See Disclosure Statement To Accompany Debtor's Fourth Amended Plan of Reorganization, dated August 24, 2011, Docket Entry No. 1421, at pages 16–17.

**13.** Wright, for instance, had not determined whether he would live in the residence, or rent it out to pay the secured creditor(s) obligations.

tion Award is not subject to discharge in his case.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Post–Confirmation Award of Country is not subject to discharge in this case. Wright shall be personally liable for payment of the Post–Confirmation Award in full, and said Award shall survive the discharge granted to Wright in this case. Country is to lodge an appropriate form of order that is consistent with this decision.