**Karen LUCIA and Jeffrey Lucia, on behalf of themselves and other similarly situated, Plaintiffs,**

v.

**WELLS FARGO BANK, N.A. d/b/a Wells Fargo Home Mortgage and Does 1–10, Defendants.**

**Phillip R. Corvello, on behalf of himself and all other similarly situated, Plaintiff,**

v.

**Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage d/b/a America's Servicing Company, Defendants.**

**Nos. C 10–04749 JSW, C 10–05073 JSW.**

United States District Court, N.D. California.

April 22, 2011.

Brian Russell Strange, Gretchen Arlene Carpenter, Strange & Carpenter, Patrick Mark Dunlevy, Public Counsel, Los Angeles, CA, for Plaintiffs.

Matthew Gordon Ball, K & L Gates LLP, San Francisco, CA, David D. Christensen, Irene C. Freidel, K & L Gates LLP, Boston, MA, for Defendants.

Timothy G. Blood, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA, for Phillip R. Corvello.

## ORDER GRANTING WELLS FARGO'S MOTIONS TO DISMISS IN RELATED CASES

JEFFREY S. WHITE, District Judge.

Now before the Court are the motions to dismiss filed by Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage ("Wells Fargo"). Having considered the parties' papers, the relevant legal authority, and the record in this case, the Court GRANTS Wells Fargo's motions to dismiss in both related cases without leave to amend.[1]

## BACKGROUND

### A. The Home Affordable Modification Program.

In the midst of the financial crisis of 2008, Congress enacted the Emergency Economic Stabilization Act. In an effort to mitigate the financial impact of the foreclosure crisis and preserve home ownership, the central piece of that legislation was the Trouble Asset Relief Program ("TARP"), through which the Secretary of the Department of Treasury was delegated the board power to "implement a plan that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . other available programs to minimize foreclosures." 12 U.S.C. § 5219(a).

Acting under this authority, the Secretary of the Treasury announced the "Making Home Affordable Program" which included the "Home Affordable Mortgage Program ("HAMP") in order to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable reduced levels, without discharging any of the underlying debt." (Lucia Compl. at ¶¶ 1, 2.) Under HAMP, loan servicers are provided with incentive payments for issuing permanent loan modifications. Banks that receive federal funding from the TARP are obligated to participate in HAMP. (*Id.* at ¶ 2.) Wells Fargo received $25 billion in TARP funds

---

1. The Court GRANTS the pending motions for leave to file notice of supplemental authority.

(*See* Case No. 10–04749, doc. nos. 47 and 48; Case No. 10–05072, doc. no. 34.)

in 2008 and, in exchange, agreed to participate in HAMP. (*Id.* at ¶ 3.)

Wells Fargo received $25 billion in TARP finds in 2008 and, in exchange, agreed to participate in the HAMP program. (*Id.* at ¶¶ 2, 28.) Wells Fargo entered into a Servicer Participation Agreement ("SPA") with the federal government on April 13, 2009. (*Id.* at ¶ 28.) On March 16, 2010, Wells Fargo entered into an Amended and Restated SPA. (*Id.* at ¶ 29.) The SPA incorporates supplemental documentation and guidelines issued by the Department of Treasury, Fannie Mae or Freddie Mac, collectively known as the "Program Guidelines." (*Id.* ¶ 30.)

Fannie Mae issued its Supplemental Directives ("SDs") from April 2009 through September 2010, which set out HAMP-related activities Wells Fargo must perform and all eligibility guidelines. (*Id.* ¶ 32.) The guidelines set forth basic eligibility criteria and requires the servicer to perform a net present value ("NPV") analysis, comparing the NPV of a modified loan to the NPV of an unmodified loan. (*Id.* at ¶¶ 36–39; SD 09–01 at 4–5.) The servicer is required to apply a sequence of steps, the "Standard Modification Waterfall," to evaluate a hypothetical loan modification that would lower the borrower's payment to no greater than 31 % of the borrower's gross monthly income. (*Id.;* SD 09–01 at 8–10.) The Standard Modification Waterfall includes the steps of reducing the interest rate in increments of .125% down to the floor interest rate of 2%, extending the term of the loan, and forgiving principal. (SD 09–01 at 9–10.) "If the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed 'positive' and the servicer MUST offer the modification." (SD 09–01 at 4; Lucia Compl. at ¶ 39.) "If the NPV result for no modification is greater than NPV result

for the modification scenario, the modification result is deemed 'negative' and the servicer has the option of performing the modification in its discretion." (SD 09–01 at 4.)

Under HAMP, "[s]ervicers must use a two-step process for HAMP modifications. Step one involves providing a Trial Period Plan ["TPP"] outlining the terms of the trial period, and step two involves providing the borrower with an Agreement that outlines the terms of the final modification." (SD 09–01 at 14.) Under the TPP the homeowner makes mortgage payments based on adjusted loan terms during a three-month trial period. (Lucia Compl. at ¶ 40; SD 09–01 at 17–18.) Plaintiffs allege that Wells Fargo offers TPPs to eligible homeowners through a TPP Contract which promises a permanent HAMP modification for those homeowners who make the required payments under the plan and fulfill the documentation requirements. (Lucia Compl. at ¶ 41.)

## B. Plaintiffs Karen and Jeffrey Lucia.

In 1999, Plaintiffs Karen and Jeffrey Lucia purchased and moved into a house located at 4464 Jay Court in Napa, California. (*Id.* at ¶ 57.) In 2006, the Lucias refinanced their debt on the home by taking out a loan with Wells Fargo in the amount of $520,000. Due to the economic recession, the Lucias lost their jobs and, struggling to make their mortgage payments, sought out a loan modification. (*Id.* at ¶¶ 58–61.) Wells Fargo did not inform the Lucias that they might qualify for a loan modification under HAMP, but after consulting with the Department of Housing and Urban Development, Ms. Lucia inquired of the bank about how to apply for a HAMP loan modification. (*Id.* at ¶¶ 61–62.)

Ms. Lucia alleges that she spoke with a Wells Fargo representative who assured

her that the Lucias were pre-approved for the modification and that if they sent in all of the documentation and made all of their reduced payments on time, their reduced monthly payment would become permanent. (*Id.* at ¶ 62.) After multiple telephone discussions with Wells Fargo representatives about required documentation and, having sent in the required documents and reduced monthly payments, and while still in negotiations with Wells Fargo about the permanent loan modification, without notice on August 12, 2010, the bank initiated a foreclosure sale on the home. (*Id.* at ¶¶ 63–70.) Wells Fargo indicated that the foreclosure was proceeding because the Lucias' loan modification application had been denied due to lack of proper documentation. (*Id.* at ¶ 70.) After the foreclosure, the bank reviewed the matter and indicated that it believed it had not acted improperly. (*Id.* at ¶ 72.) After the home was purchased by U.S. Bank National Association, Ms. Lucia sent Wells Fargo more of the requested documentation, but received only a notice from the court indicating that the eviction trial had been scheduled for October 22, 2010. (*Id.* at ¶ 73.)

The Lucias allege the following claims for relief: (1) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code section 1788, *et seq.;* (2) violation of the Business and Profession Code section 17200, *et seq.;* (3) breach of the covenant of good faith and fair dealing; (4) breach of contract (for the TPP agreement); (5) breach of contract (for the TPA contracts); and (6) promissory estoppel.

## C. Plaintiff Phillip R. Corvello.

In September 2007, Plaintiff Phillip R. Corvello closed escrow on a home in Fairfield, California and secured a mortgage from Wells Fargo. (Corvello Compl. at

¶ 71.) In the beginning of May 2009, Corvello contacted Wells Fargo and informed the bank that it was unlikely he could remain current on his mortgage payments and discussed options including the Trial Period Plans under HAMP. (*Id.* at ¶ 72.) On July 17, 2009, Wells Fargo sent Corvello a form letter indicating that he may qualify for a HAMP TPP. (*Id.* at ¶ 75.) After Corvello timely complied with all of the requirements specified in the letter and sent in his initial payment, he signed the standard TPP agreement and timely submitted the required documentation and all three TPP payments. (*Id.* at ¶¶ 78–79.)

The standardized TPP Agreement states in part:

> If I [Borrower] am in compliance with the Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the mortgage on the Property, and (2) the Note secured by the Mortgage.

(*Id.* at ¶ 61 and Ex. G.) Although Corvello complied with the requirements of the trial period, he was never offered a permanent mortgage modification. (*Id.* at ¶ 80.)

Corvello alleges the following claims for relief: (1) breach of contract for breach of the TPP Agreement; (2) breach of contract as a third party beneficiary to the TPA; (3) promissory estoppel; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Business and Profession Code section 17200, *et seq.;* and (6) declaratory relief.

The Court shall address additional facts as necessary in the remainder of this Order. The Court shall address the motions to dismiss together in both related cases and only identify distinctions between the cases to the extent they are relevant to the analysis.

## ANALYSIS

### A. Legal Standard.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

■ Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246–47 (9th Cir.1990).

■ As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

### B. Motions to Dismiss.

Wells Fargo moves to dismiss the Plaintiffs' claims on a number of bases. The Court shall address each in turn.

#### 1. National Bank Act Preemption.

Wells Fargo contends that Plaintiffs' state law claims impermissibly impinge on the bank's ability to service mortgage loans, including making the decision whether and under what circumstances to modify a loan or commence foreclosure proceedings. Pursuant to the National Banking Act ("NBA"), Congress vested the national banks with certain enumerated powers, as "shall be necessary to carry on the business of banking," including the power to engage in mortgage lending. *See* 12 U.S.C. §§ 24, 371(a); *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007). Under 12 C.F.R. § 34.4(a), the NBA and its implementing regulations expressly permit national banks to "make real estate loans ... without regard to state law limitations concerning ... [p]rocessing, origination, servicing, sale or purchase of, or investment or participation, mortgages." Although "state laws that obstruct, impair, or condition a national bank's ability to fully exer-

cise its Federally authorize real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a)(10). However, "[f]ederally chartered banks are subject to state laws of general application in the daily business to the extent such laws do not conflict with the letter or the general purposes of the [NBA]." *Watters,* 550 U.S. at 11, 127 S.Ct. 1559.

▪ Although several district courts within the Ninth Circuit have found that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1464(b)(10), preempts certain state law claims relating specifically to mortgage processing, the Court finds that the particular claims made in this matter—premised upon state contract law, unfair competition and Rosenthal Act—are state laws of general application. *See Winding v. Cal–Western Reconveyance Corp.,* 2011 WL 221321, *12 (E.D.Cal. Jan. 24, 2011); *Khan v. World Savings Bank, FSB,* 2011 WL 133030, *4 (N.D.Cal. Jan. 14, 2011); *Gens v. Wachovia Mortgage Corp.,* 2011 WL 9121, *9 (N.D.Cal. Jan. 3, 2011). The theories upon which the claims are based do not necessarily impinge upon the bank's obligations under the NBA. Accordingly, the Court does not dismiss Plaintiffs' claims based upon the theory of federal preemption.

### 2. Breach of Contract Claims.

▪ Wells Fargo argues that, while couching their claims as state law breach of contract claims, Plaintiffs are essentially trying to maintain a private right of action to enforce the requirements of HAMP. Neither the Emergency Economic Stabilization Act, which created HAMP, nor HAMP's guidelines create "a property interest in loan modifications for mortgages

in default." *Williams v. Geithner,* 2009 WL 3757380, at *6 (D.Minn. Nov. 9, 2009); *see also Hoffman v. Bank of America, N.A.,* 2010 WL 2635773, at *3 (N.D.Cal. June 30, 2010) (holding that because lenders are not required to make loan modifications for borrowers that qualify under HAMP and the servicer's agreement does not confer an enforceable right on the borrower, there is no private right to enforce HAMP). As have the other district courts that have addressed the issue, this Court finds that HAMP affords homeowners no private right of action.

Plaintiffs argue, however, that they are not trying to create a private right of action to enforce HAMP. Rather, Plaintiffs contend that they seek to enforce Wells Fargo's contractual obligations under the SPA and TPP Contracts, not to claim a constitutionally protected property right in a permanent modification. Plaintiffs allege that Wells Fargo consented to offer them a permanent modification if they successfully completed their TPP, thereby contending that the TPP was a contract that was breached as Plaintiffs fulfilled their obligations under the TPP, and Wells Fargo reneged by failing to offer them a permanent modification.[2] Plaintiffs also argue that the HAMP guidelines in effect at the time of the TPPs at issue here provided that borrowers who successfully completed the TPP and provided all necessary documentation were entitled to receive an offer for permanent loan modification. (*See* Lucia Opp. Br. at 9; Corvello Opp. Br. at 10–11, citing SD 09–01 at 17–18.)

▪ In order to state a claim for breach of contract, Plaintiffs must allege

---

**2.** In the Lucias' complaint, Plaintiffs were never even given the TPP Contract, but only allegedly offered terms in conversation over the telephone. Still, the Court shall address the claims under the terms that would have been effective at the time of the alleged oral offer.

"the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal. Rptr.2d 23 (2001). "Consideration consists of a benefit bestowed or a detriment suffered as bargained for by the parties." *A.J. Industries, Inc. v. Ver Halen,* 75 Cal. App.3d 751, 761, 142 Cal.Rptr. 383 (1977).

Wells Fargo contends that the claim for breach of contract must be dismissed because Plaintiffs have not alleged a cognizable form of consideration to support the existence of a valid contract. Although Plaintiffs must concede that they had a pre-existing duty to make mortgage payments, Plaintiffs contend that the TPP payments are sufficient consideration and the additional consideration suffered was the credit consequences of their partial mortgage payments and fulfilling the burdensome documentation requirements of the loan modification approval process. (Lucia Opp. Br. at 12; Corvello Opp. Br. at 12–13.) Plaintiffs' allegations, accepted as true, support the existence of the contract to participate in the TPP for the three month trial period, but not a contract for permanent modification after the trial period expired.[3] *See Morales v. Chase Home Finance LLC,* Case No. 10–02068 JSW, at 7; *see contra Ansanelli v. JP Morgan Chase Bank, N.A.,* 2011 WL 1134451, at *4 (N.D.Cal. March 28, 2011).

■ Under California law, the intention of the parties as expressed in the contract is the source of contractual rights and duties. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage,* 69 Cal.2d 33, 38, 69 Cal.Rptr. 561, 442 P.2d 641 (1968). In

*Grill v. BAC Home Loans Servicing LP,* 2011 WL 127891, at *4 (E.D.Cal. Jan. 14, 2011), the Court reviewed the language of the TPP agreement similar to the ones at issue here and determined that TPP Contract contradicted the plaintiff's claim that a binding contract for loan modification existed. The TPP Contracts here contain the same language that the *Grill* court found insufficient to support a contract for permanent loan modification:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(Corvello Compl. Ex. G at ¶ 2G.) The *Grill* court determined that this contractual language "makes clear that providing the requested documents was simply a part of the application process, which plaintiff was willing to complete in the hope that BAC would modify his loan. Under the language of [the TPP Contract], a binding modification would not result unless and until BAC determined that plaintiff complied with the requirements. If BAC so determined, then it would send plaintiff a modification agreement, including a new monthly payment amount, which both plaintiff and defendant would execute." 2011 WL 127891, at *4. Because Grill had failed to allege either that the lender de-

---

**3.** The fact that the Lucias never received a written agreement from Wells Fargo regarding their participation in the Trial Period may be determinative. *See Clark v. Countrywide Home Loans, Inc.,* 732 F.Supp.2d 1038, 1043

(E.D.Cal.2010) (holding that oral agreement to modify mortgage loan falls within the statute of frauds). However, the Court addresses the merits of the breach of contract claims regardless.

termined that he had met the requirements or that the lender sent Grill a loan modification that was executed, the court dismissed the breach of contract claim with leave to amend. *Id. See Vida v. OneWest Bank, F.S.B.,* 2010 WL 5148473 *6 (D.Or. Dec. 13, 2010) ("The Trial Period Plan is explicitly not an enforceable offer for loan modification."). *See also Lonberg v. Freddie Mac,* 776 F.Supp.2d 1202, 2011 WL 838943 (D.Or. March 4, 2011); *Wigod v. Wells Fargo Bank, N.A.,* 2011 WL 250501 (N.D.Ill. Jan. 25, 2011).

The Court has reviewed the decisions of other district courts that have held that the TPP Contract supports a breach of contract claim by borrowers who entered the TPP Contract. Those decisions do not address the specific contract provision considered here and in *Grill* and *Morales. See Durmic v. J.P. Morgan Chase Bank, N.A.,* 2010 WL 4825632 (D.Mass. Nov. 24, 2010); *Jackson v. Ocwen,* 2011 WL 587587 (E.D.Cal. Feb. 9, 2011). In *Bosque v. Wells Fargo Bank, N.A.,* 762 F.Supp.2d 342 (D.Mass.2011), the court reviewed other specific provisions of the TPP contract but did not hold that terms of the TPP Contract created a contract for permanent modification. There, the court denied the lender's motion to dismiss the plaintiffs' breach of contract claim and noted that the plaintiffs did not argue "that the TPP is a contract for a permanent loan modification." *Id.* at 352. The court determined that although the plaintiffs had previously argued that they were entitled to a permanent modification as long as they complied with their obligations under the TPP, the plaintiffs more recently relied on another contract theory that "they are merely entitled to a decision by Wells Fargo as to whether they will receive a permanent modification by the modification effective date specified in section 2 of the TPP." *Id.* at 349. The *Bosque* plaintiffs alleged that Wells Fargo "failed to notify plaintiffs of *any* decision with regard to their loan modification status." *Id.* at 349. The *Bosque* court denied the motion to dismiss the contract claim on the ground that "the TPP contains all essential and material terms necessary to govern the trial period repayments and the parties' related obligations," including "a decision on whether plaintiffs are entitled to the permanent modification." *Id.* at 352.

■ Plaintiffs specifically allege that "[t]he TPP Contract promises a permanent HAMP modification for those homeowners who make the required payments under the plan and fulfill the documentation requirements" and that "Wells Fargo breached the TPP Contract ... by failing to offer Plaintiffs and members of the Plaintiff Class permanent HAMP modifications at the close of their Trial Periods." (Lucia Compl. at ¶¶ 41, 110; Corvello Compl. at ¶¶ 57, 94.) Plaintiffs fail to allege, however, that they have met all the conditions set forth in the TPP Contract for loan modification, including receipt of a "fully executed copy of a Modification Agreement," and therefore fail to allege the existence of a binding contract regarding a permanent loan modification. Accordingly, the motion to dismiss both sets of Plaintiffs' breach of contract claims are therefore GRANTED.

■ With regard to whether Plaintiffs could amend their breach of contract claims to allege additional facts, the legal question whether Plaintiffs had a contract for permanent modification does not turn on whether or not Plaintiffs actually qualify for permanent HAMP modification. As the court determined in *Williams v. Geithner,* Congress did not intend for HAMP to mandate loan modifications. 2009 WL 3757380, at *6. The *Williams* court determined that the "regulations promulgated by Treasury for administer-

ing the HAMP clearly demonstrate that the Secretary allowed the exercise of some discretion, including calculation of the NPV, to the servicers." *Id.* HAMP only requires participating servicers to consider eligible loans for modification, but does not require servicers to modify eligible loans. *See Hoffman,* 2010 WL 2635773, at *4; *Marks v. Bank of America,* 2010 WL 2572988, at *3 (D.Ariz. June 22, 2010).

Even if Plaintiffs were able to allege that Wells Fargo determined that they qualified for permanent modification under the Net Present Value analysis, neither will be able to allege that he received a fully executed copy of a Modification Agreement. Thus, amendment of the breach of contract claim would be futile and no leave to amend shall be granted.

### 3. Breach of the Covenant of Good Faith and Fair Dealing Claims.

Plaintiffs allege that Wells Fargo violated the covenant of good faith and fair dealing in its TPP Contracts by "[f]ailing to permanently modify loans and/or provide alternatives to foreclosure and using unfair means to keep Plaintiffs and the Plaintiff Class in temporary modification contract" and by "charging and collecting Trail Period Plan payments from Class members, but never extending permanent loan modification offers." (Lucia Compl. at ¶ 104b; Corvello Compl. at ¶ 110.)

 "Every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Fortaleza v. PNC Financial Services Group, Inc.,* 642 F.Supp.2d 1012, 1021 (N.D.Cal.2009) (quoting *McClain v. Octagon Plaza, LLC,* 159 Cal.App.4th 784, 798, 71 Cal.Rptr.3d 885 (2008)). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frus-

trates the other party's rights to benefit from the contract." *Id.* at 1021–22 (citations omitted).

Because Plaintiffs have not sufficiently alleged the existence of a contract for permanent loan modification, Wells Fargo's motions to dismiss the claims for breach of the implied covenant of good faith and fair dealing are GRANTED.

### 4. Promissory Estoppel Claims.

 Plaintiffs contend that they detrimentally relied upon Wells Fargo's promise of a permanent modification if they completed three months of trial period payments and completed documentation requirements. (*See, e.g.,* Lucia Compl. at ¶¶ 124–25; Corvello Compl. at ¶¶ 104–05.) Promissory estoppel will bind a promisor " 'when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.' " *Mehta v. Wells Fargo Bank, N.A.,* 737 F.Supp.2d 1185, 1198 (S.D.Cal. 2010) (quoting *Raedeke v. Gibraltar Sav. & Loan Ass'n,* 10 Cal.3d 665, 672 n. 1, 111 Cal.Rptr. 693, 517 P.2d 1157 (1974)). The elements of a promissory estoppel claim are "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance." *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.,* 688 F.Supp.2d 940, 953 (N.D.Cal.2010) (citation omitted). "The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances." *Id.*

As discussed above, the TPP Contract does not require Wells Fargo to modify an applicant's loan. HAMP did not, however,

require that servicers verify eligibility prior to accepting borrowers into the TPP until the program was amended by directive in January 2010: "A significant program change is a requirement for full verification of borrower eligibility prior to offering a trial period plan." (SD 10–01 at 1, available at www.hmpadmin.com.) Supplemental Directive 10–01 clarified that under the prior Supplemental Directive 09–01, HAMP "gave servicers the option of placing a borrower into a trial period plan based on verbal financial information obtained from the borrower, subject to later verification during the trial period." (*Id.*; *see* SD 09–01 at 17 ("Servicers are not required to verify financial information prior to the effective date of the trial period.")) The Supplemental Directive 10–01 amended HAMP such that "[e]ffective for all HAMP trial period plans with effective dates on or after June 1, 2010, a servicer may only offer a borrower a trial period plan based on verified income documentation in accordance with this Supplemental Directive." (*Id.*) The TPP Contract also provides that the borrowers will provide documents to permit verification of income. (Corvello Compl., Ex. G at ¶ G1.) Thus, at the time Plaintiffs were offered Trial Period modifications, there was no promise that Plaintiffs would be found eligible for permanent loan modification on which Plaintiffs could reasonably rely.

Regardless of any allegation of reasonable reliance, courts have determined that lenders are not required under HAMP to modify eligible loans. *See Marks,* 2010 WL 2572988 at *3. "Even Fannie Mae, which has rights under the [Servicer Participation] Agreement, cannot force a participating servicer to make a particular loan modification." *Id.* "A qualified borrower would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him or her because the Agreement does not require that

[the participating servicer] modify eligible loans." *Escobedo v. Countrywide Home Loans, Inc.,* 2009 WL 4981618, at *3 (S.D.Cal. Dec. 15, 2009).

In *Escobedo,* the court determined that the SPA set forth Home Affordable Modification Program Guidelines which provided that "[p]articipating servicers are required to *consider* all eligible loans under the program guidelines unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements." *Id.* (emphasis added in original). The *Escobedo* court determined that the SPA Agreement under HAMP "does not state that [the servicer] must modify all mortgages that meet the eligibility requirements." *Id. See also Hoffman,* 2010 WL 2635773, at *4 (citing *Escobedo* ); *Benito v. Indymac Mortgage Serv.,* 2010 WL 2130648, at *7 (D.Nev. May 21, 2010) (determining that HAMP does not confer on borrowers the right to enforce the HAMP contract and that "even Fannie Mae, which has rights under the contract, cannot force [the servicer] to make any particular loan modification").

■ Having determined that Wells Fargo did not make promises about permanent loan modification, the Court concludes that Plaintiffs fail to allege a claim for promissory estoppel. *See Grill,* 2011 WL 127891, at *8. Wells Fargo's motions to dismiss the claims for promissory estoppel are therefore GRANTED.

**5. Breach of Contract Claim Under the SPA.**

■ Plaintiffs assert a breach of contract claim under the Servicer Participation Agreement ("SPA") between Well Fargo and Fannie Mae. (Lucia Compl. at ¶¶ 114–122; Corvello Compl. at ¶¶ 95–101.) As many district courts in the Ninth Circuit have determined, individual borrowers

do not have standing to sue under the SPA because they are not intended third party beneficiaries. In *Hoffman,* the court determined that borrower was "an incidental and not an intended beneficiary to the HAMP servicer's agreement." 2010 WL 2635773, at *4 (N.D.Cal. June 30, 2010) (citing *Klamath v. Patterson,* 204 F.3d 1206 (9th Cir.1999) and distinguishing *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237 (9th Cir.2009)). *Hoffman* recognized the weight of authority concluding that a borrower does not have enforceable rights under the HAMP Servicer Participation Agreement, and the Court adopts the *Hoffman* court's reasoning to determine that Plaintiffs do not have standing to sue under the SPA. *Hoffman,* 2010 WL 2635773, at *3–4. *See also Morales,* Case No. 10–02068 JSW, at 12–13; *see also Orcilla v. Bank of America, N.A.,* 2010 WL 5211507 (N.D.Cal. Dec. 16, 2010) (disagreeing with *Marques v. Wells Fargo Home Mortg.,* 2010 WL 3212131 (S.D.Cal. Aug. 12, 2010)). Wells Fargo's motions to dismiss the claim for relief for breach of the SPA contract are therefore GRANTED.

### 6. Rosenthal Act Claim.

The Lucia Plaintiffs allege that Wells Fargo has violated the Rosenthal Act by making false and deceptive representations in connection with collection of a debt. (Lucia Compl. at ¶ 89.) The Lucias contend that Wells Fargo made misrepresentations "in connection with the collection of any debt," or using "unfair or unconscionable means to collect or attempt to collect any debt" pursuant to Section 1788.17 of the California Civil Code, which incorporates by reference certain provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692(e) and (f). (*Id.*)

Wells Fargo does not dispute Plaintiffs' allegation that it is a debt collector within the meaning of the Rosenthal Act, but contends that Plaintiffs fail to allege a "demand" for payment of delinquent debt. (Reply at 13–14) (citing *Walcker v. SN Commercial, LLC,* 286 Fed.Appx. 455, 457 (9th Cir.2008).) In *Walcker,* the Ninth Circuit determined that the loan servicer's letters to plaintiffs were informational and not "demands for payment" in violation of the requirements for communications "in the collection of a claim" under Washington state law. 286 Fed.Appx. at 457 (citing *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 388–89 (7th Cir.1998)). Unlike the informational letters in *Walcker,* Plaintiffs allege that the communications from Wells Fargo demanded three Trial Period payments and indicate that the borrower is required to pay the debt. These allegations are sufficient to demonstrate a demand for payment in support of a Rosenthal Act claim.

To evaluate claims under the Rosenthal Act, the Court must consider whether the alleged communications from the debt collector would likely mislead the "least sophisticated debtor." *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir.2007) (citing *Swanson v. S. Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1229 (9th Cir.1989).) Plaintiffs contend that Wells Fargo misled borrowers into believing that Wells Fargo screens borrowers for eligibility and determines that borrowers qualify for HAMP before placing them into Trial Periods so that they would be entitled to permanent modification if they successfully complete the Trial Period. (Opp. Br. at 23.)

The "least sophisticated debtor" standard is an objective one. *Swanson,* 869 F.2d at 1227. Under that standard, the Court determines that the alleged communications do not constitute false, de-

ceptive or misleading statements that Wells Fargo promised a permanent loan modification if the borrower successfully makes three Trial Period payments. The TPP Contract operative at the time states that the TPP "is not a modification of the Loan Documents" and that "the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan." (Corvello Compl., Ex. G at ¶ 2.G.) The title of the TPP Contract indicates that the TPP is the first step of a "Two–Step Documentation Process." (*Id.*) Plaintiffs have not demonstrated that the TPP Contract or other modification-related communications were false, deceptive or misleading. *See Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996) (collection agency did not violate Section 1692e where notice correctly told plaintiff that she had an unpaid debt, and properly informed her that failure to pay might adversely affect her credit reputation).

Therefore, Wells Fargo's motion to dismiss the Lucias' claim for relief for violation of the Rosenthal Act is GRANTED.

### 7. UCL Claim.

Both sets of Plaintiffs allege that Wells Fargo used unfair, deceptive and unlawful means to induce Plaintiffs to enter into Trial Period modifications and deny Plaintiffs permanent modification in violation of the California Business and Professions Code section 17200 ("UCL" or "Section 17200"). (Lucia Compl. at ¶ 95; Corvello Compl. at ¶ 117.) Under Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof.Code § 17200.

The Lucias' complaint alleges that Wells Fargo's unfair business practices include "[f]ailing to perform loan servicing functions consistent with its responsibilities to Plaintiffs and the Plaintiff Class and its responsibilities under HAMP." (Lucia Compl. at ¶ 94a.) Plaintiffs do not dispute that HAMP does not create a private right of action. *See Marks,* 2010 WL 2572988 at *5–6. The Lucias therefore may not assert a UCL claim based on alleged violations of HAMP because the UCL cannot create a private right of action where none exists under the federal statute. *Aleem v. Bank of America,* 2010 WL 532330 (C.D.Cal. Feb. 9, 2010) (citing *Summit Tech., Inc. v. High–Line Med. Instruments Co., Inc.,* 922 F.Supp. 299, 316 (C.D.Cal.1996)).

The Lucias' complaint also alleges that Wells Fargo engages in unlawful business practices by violating the Rosenthal Act. (Lucia Compl. at ¶ 93.) Both complaints further allege that Wells Fargo engages in fraudulent conduct by making misrepresentations and omissions of fact about permanent loan modifications which induced Plaintiffs to enter the TPP Contracts. (Lucia Compl. at ¶ 95a; Corvello Compl. at ¶ 117.) As the Court has determined that the TPP Contract makes no promise of permanent modification and has dismissed those claims on which the UCL claim is predicated, the Court GRANTS Wells Fargo's motions to dismiss both sets of Plaintiffs' claims for relief for violation of Section 17200. *See Rubin v. Wal–Mart Stores, Inc.,* 599 F.Supp.2d 1176, 1179 (N.D.Cal.2009) (holding that where a UCL claim is predicated upon other claims that fail, the UCL claim must be dismissed as well).[4]

---

4. Similarly, as the Court has found there is no underlying viable claim for liability, Corvello's claim for declaratory relief is dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's motions to dismiss the two related complaints without leave to amend. Separate judgments shall issue. The clerk shall close both files.

**IT IS SO ORDERED.**