Marie GAUDIN, Plaintiff,

v.

SAXON MORTGAGE SERVICES, INC., Defendants.

No. C 11–1663 RS.

United States District Court,
N.D. California,
Northern Division.

Aug. 22, 2011.

**1052**

Daniel Joseph Mulligan, Jenkins, Mulligan & Gabriel, LLP, San Diego, CA, Peter B. Fredman, Law Office of Peter Fredman, Berkeley, CA, for Plaintiff.

Erik Wayne Kemp, Severson & Wersonm, A Professional Corporation, Regina Jill McClendon, Esq., Locke Lord, San Francisco, CA, Jeanette Viggiano Torti, Laila Abou–Rahme, Bingham McCutchen, LLP, New York, NY, for Defendants.

### ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND

RICHARD SEEBORG, District Judge.

In this putative class action, named plaintiff Marie Gaudin alleges that she and defendant Saxon Mortgage Services, Inc. entered into a binding contract under which Saxon had the duty to evaluate her under the Homeowners Affordable Modification Program ("HAMP") and to offer her a permanent modification of the terms of her home mortgage agreement, in the event all the conditions were satisfied. Gaudin contends that after she relied on the purported agreement to make reduced monthly payments during a "trial period," Saxon wrongfully rejected her for a permanent modification, declared her loan in default, and initiated foreclosure proceedings. Saxon moves to dismiss the com-

plaint, arguing (1) Gaudin's claims are barred as a result of her having filed a bankruptcy petition under Chapter 13 and received confirmation of her bankruptcy plan, and (2) the complaint otherwise fails to state a viable claim. Pursuant to Civil Local Rule 7–1(b) the motion has been submitted without oral argument. For the reasons outlined below, the complaint will be dismissed, with leave to amend.

#### 1. *Bankruptcy issues.*

■ Because standing is a one of the "threshold determinants of the propriety of judicial intervention," *City of Los Angeles v. County of Kern,* 581 F.3d 841, 845–846 (9th Cir.2009), which may be raised *sua sponte,* the parties were ordered to brief the question of whether Gaudin's bankruptcy petition precludes her from bringing this action, absent abandonment of the claims by the bankruptcy trustee. Although the parties have cited no controlling authority, and the Court has located none, appellate decisions from the Second and Third Circuits are persuasive precedent that a bankruptcy under Chapter 13 does not implicate the standing hurdle presented by a filing under Chapter 7. *See, Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515 (2d Cir.1998) ("we conclude that a Chapter 13 debtor, unlike a Chapter 7 debtor, has standing ..."); *Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1209, n. 2. (3d Cir.1991) ("Chapter 13 debtors are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case."). The rule of *Olick* and *Maritime Electric* has previously been followed in this district. *See Donato v. Metropolitan Life Insurance Co.,* 230 B.R. 418, 425 (N.D.Cal.1999).[1] Accordingly, the mere fact of Gaudin's bankruptcy filing is an

---

1. Saxon incorrectly characterizes *Donato* as a decision of the bankruptcy court. Although published in the Bankruptcy Reporter, pre-sumably because of its subject matter, it is the decision of a district court judge in this district.

insufficient basis on which to conclude this suit cannot go forward.

■ Saxon further argues, however, that principles of *res judicata* and/or judicial estoppel bar this action because the validity of Gaudin's indebtedness to Saxon was adjudicated in the confirmation of her bankruptcy plan, and she did not amend her schedules to list her affirmative claims against Saxon until after that confirmation. This action, however, does not challenge the legality of the original loan agreement, the validity of Saxon's security interest, or the amount of indebtedness and arrearage under that agreement. As such, it does not implicate any of the matters that were raised by Saxon's proof of claim in the bankruptcy proceeding. Rather, the claims in this action arise from an alleged agreement under which Gaudin might have eventually obtained a modification of her agreement with Saxon at some point *after* confirmation of the plan, while the plan itself merely recognized that, as of that point in time, the existing debt was valid and enforceable. Nothing in this action seeks to relitigate any issue pertaining to the existing mortgage agreement.

The cases on which Saxon relies are inapposite. For example, in *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir.1998), the plaintiff "attempted to attack [the lender's] right to foreclose and its other actions *under the contract.*" *Id.* at 528 (emphasis added). The "gravamen" of the action was that the lender "violated its duties under the notes and deeds of trust." *Id.* at 529. Because the plaintiff had not challenged the lender's proof of claim in his bankruptcy, which asserted the contractual indebtedness under those notes, his separate action was held to be barred. *Id.* In contrast, Gaudin makes no

claim that Saxon violated any duties arising under the original loan agreement. Nor has Saxon shown how any position Gaudin took in the bankruptcy action is inconsistent with her position here, or the claims she is attempting to pursue. Accordingly, neither Gaudin's filing of a bankruptcy petition nor the confirmation of her plan serves as a basis for dismissal.[2]

### 2. *Viability of the claims*

■ Apart from the issues arising from Gaudin's bankruptcy, the primary thrust of Saxon's motion to dismiss is its contention that the "Home Affordable Modification Trial Period Plan" on which Gaudin bases her claims is simply not a legally binding and enforceable contract. The face of the document, however, strongly suggests otherwise. The initial paragraph states, "If [the borrower is] in compliance with this Trial Period Plan (the "Plan") and [her] representations in Section 1 continue to be true in all material respects, then the Lender *will provide* [her] with a Homeowners Affordable Modification Agreement . . . ." The document goes on to provide that the Trial Period Plan itself will take effect upon signature by both the borrower and the lender, which occurred in this case. While the document sets out various conditions that must be fulfilled before the lender is obligated to provide a permanent loan modification, the implication is that upon satisfaction of those conditions, the lender will (and must) provide the borrower with a permanent loan modification agreement. For example, paragraph 2G provides that the lender will *not* be "obligated or bound" to execute a permanent modification agreement absent obtaining appropriate documentation from other lien holders to permit it to retain its

---

**2.** That said, at this juncture it is unclear whether further proceedings in the bankruptcy court might become necessary as a result of Gaudin's pursuit of these claims, should

they otherwise prove viable. Any such complications could bear on her suitability to serve as a class representative, if the matter ultimately reaches that stage.

lien priority. Similarly the same paragraph states the lender will not be obligated or bound if the borrower fails to meet "any one of the requirements under this Plan." These provisions would not be necessary in a document that otherwise had no potential to give rise to an obligation to provide a permanent modification.

There is one provision, however, that arguably reserves to the lender the unilateral power to withhold permanent modification at its own discretion. Paragraph 2F provides that the trial plan will terminate if, among other things, the lender does not provide a fully executed copy of the permanent modification agreement by the time the modification is supposed to take effect. Read literally, of course, this provision would render the other apparent promises in the document illusory. Because it conflicts with the clear tenor of the remainder of the document, however, it is an insufficient basis for concluding as a matter of law at the pleading stage that the "Home Affordable Modification Trial Period Plan" gave rise to *no* legally enforceable obligations.

Saxon also argues that the document cannot be a binding contract because it is not supported by adequate consideration, and lacks certainty as to the terms of any permanent modification. The former point has been rejected in this district by one of the very cases on which Saxon relies. *See Lucia v. Wells Fargo Bank,* 798 F.Supp.2d 1059, 1066–67, 2011 WL 3134422, *5 (N.D.Cal. April 22, 2011).[3] As to the latter point, Saxon is conflating the requirements for any subsequent contract for permanent modification with what is necessary to make this document an enforceable agreement. The trial period agreement provides both an estimate of what payments under a permanent modification would be, and a methodology by which the actual payments are to be calculated. *See ¶ 3.* The lender's obligations under *this* agreement to exercise good faith in calculating the payments under a permanent modification are sufficiently certain. Accordingly, at least at the pleading stage, the contention that there can be no enforceable obligations arising from the Home Affordable Modification Trial Period Plan fails.[4]

Nevertheless, the trial plan also made very clear that it was not, in and of itself a permanent modification, or an unconditional commitment by the lender to provide one. While Gaudin has alleged that she complied with all of her affirmative obligations under the agreement to provide requested documentation and to make timely payments at the trial period rate, she has not alleged that all of the conditions under which Saxon might be obligated to provide her a lender-executed permanent modification agreement were actually satisfied. *See Lucia,* 798 F.Supp.2d at 1068, 2011 WL 3134422 at *7 (dismissing complaint where plaintiffs failed to allege that they met all the conditions for permanent modification set forth in the trial plan.) Gaudin has only averred that the reasons Saxon gave her for denying permanent modification were factually incorrect. While that might support an inference that perhaps she otherwise qualified for permanent modification, absent an allegation to that effect, she has failed to state a claim. *See id.*[5]

---

**3.** *Lucia,* however, did reject the plaintiff's argument that there was any binding contract *to offer* a permanent modification.

**4.** Whether Gaudin will be able to show *damages* from the breach of any such obligations is another matter. It certainly is not clear that she should be able to recover any pay-

ments she made under the trial plan, given her pre-existing obligation to make monthly payments in a higher amount, and provisions in the trial plan reaffirming that obligation.

**5.** The *Lucia* court concluded that the plaintiffs' receipt of a lender-executed permanent modification agreement was a condition prec-

Gaudin's claims under the Rosenthal Act, of course, do not depend on the existence of a contract, or on her showing that the conditions precedent of any such contract were satisfied. Gaudin has not adequately explained, however, how an offer to consider a permanent loan modification, even if not made in good faith, constitutes an unlawful debt collection effort within the meaning of the act. Finally, Gaudin's unfair competition claim is largely dependent on her being able to state an underlying wrong. Even assuming an independent claim under the "unfair" prong of the jurisprudence is theoretically possible, whether Gaudin has sufficiently alleged such a claim would be more appropriately evaluated in the context of any amended complaint.

Accordingly the motion to dismiss is granted. Gaudin shall file any amended complaint within 20 days of the date of this order.

IT IS SO ORDERED.

edent to any obligation on the lender's part to modify the loan. Here, as discussed above, paragraph 2F could be read to excuse the lender from *any* contractual obligation, but assuming the document as a whole is an enforceable contract, then the provisions referring to an executed permanent modification agreement are best understood as explaining that the modification will not take legal effect until such a document is signed, but do not serve as a condition precedent to the lender's obligation to provide such an executed document. It should also be noted that the agreement does not unambiguously reserve to the lender the right to evaluate anew the borrower's eligibility for permanent modification once it has signed off on the trial period agreement, as opposed simply to verifying the *accuracy* of the information previously provided.