RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16b0003p.06

# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

In re: BYRON G. JACKSON,

*Debtor*.　　　No. 15-8037

Appeal from the U.S. Bankruptcy Court - Cleveland
No. 14-13977—Jessica E. Price Smith, Judge.

Decided and Filed: August 4, 2016

Before: DELK, HUMPHREY and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Erika R. Finley, Joseph E. DiBaggio, KAMAN & CUSIMANO, Cleveland, Ohio, for Appellant. Byron G. Jackson, Shaker Heights, Ohio, pro se.

_____

**OPINION**

_____

GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. This appeal concerns whether the bankruptcy court abused its discretion in determining that a condominium association violated a debtor's Chapter 7 discharge in re-scheduling a sheriff's sale in a pre-petition foreclosure action upon issuance of the discharge and closing of the case and in assessing fees associated with the re-scheduling of the foreclosure sale. For the reasons that follow, the panel finds that the court abused its discretion in sanctioning the association for violating the debtor's discharge.

**STATEMENT OF ISSUES**

The issues on appeal are whether the bankruptcy court abused its discretion in determining a condominium association violated the chapter 7 discharge order entered in an individual debtor's case through the scheduling of a sheriff's sale to complete a pre-petition

foreclosure, awarding monetary sanctions against the condominium association, and enjoining the condominium association from re-scheduling the sheriff's sale.

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).  A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted).  An order sanctioning a party and imposing a sum certain amount in damages is a final order. *See Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 525 B.R. 675, 678 (B.A.P. 6th Cir. 2015).

A bankruptcy court's decision to sanction is reviewed for an abuse of discretion. *Badovick v. Greenspan (In re Greenspan)*, 464 B.R. 61, 2011 WL 310703, at *1 (B.A.P. 6th Cir. Feb. 2, 2011) (table) (citing *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 936 (6th Cir. 2010)). *See also Mayor and City Counsel of Baltimore v. W. Va. (In re Eagle Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir. 2002) (equitable determinations subject to an abuse of discretion standard) (citations omitted).  "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'"  *Id.* at 529 (internal citation omitted).  The particular factual findings of the bankruptcy court are reviewed for "clear error." *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004) (citations omitted). Sanctions premised "upon an erroneous view of the law or an erroneous assessment of the evidence are necessarily an abuse of discretion."  *In re Royal Manor Mgmt. Inc.*, 525 B.R. 338, 346 (B.A.P. 6th Cir. 2015) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990)).

**FACTS**

On June 19, 2014 the debtor Byron Jackson ("Jackson") filed, pro se, a petition for relief under Chapter 7 of the Bankruptcy Code. On July 9, 2014 mortgagee Bank of America ("BOA"), moved for relief from stay and for abandonment of real property located at 16100 Van Aken Boulevard #402, Shaker Heights, Ohio (the "Condominium"). The Condominium was listed on Jackson's petition as his residence. In addition to seeking relief from the stay, BOA sought in rem relief for two years under 11 U.S.C. § 362(d)(4)(B), alleging a substantial arrearage on the mortgage loan and also noting prior bankruptcy filings, either by Jackson or one of his parents, that included the Condominium as scheduled property. Jackson's objection to the motion was overruled and the relief was granted through an order entered on August 19, 2014. However, BOA and Jackson entered into a loan modification agreement relating to the Condominium and the court approved it.[1]

The Carlton House Condominium Unit Owners Association of Cuyahoga County ("Carlton House") filed a similar motion to the BOA motion, seeking relief from the stay, abandonment, and in rem relief. The significant difference was it sought a permanent in rem order. At the hearing, Carlton House stated it was seeking in rem relief because of the multiple bankruptcy filings related to the Condominium. The bankruptcy court stated that the post-petition amounts were current "and the issue seems to be the desire to move forward with the foreclosure for the outstanding [pre-petition] approximately $5,900 is what I'm going to take into consideration . . . ." September 9, 2014 Hr'g Tr. 8:20-23, ECF No. 121. After a hearing, the bankruptcy court denied Carlton House's motion for a permanent in rem order for lack of cause. The language of the court's order suggests that the court found the two year in rem bar sufficient:

---

[1]This apparent contradiction in BOA's approach to this mortgage loan is explained in that the loan modification was based upon a settlement BOA entered with the Justice Department. As stated by BOA counsel at the relief from stay hearing:

> The modification had to be offered to the Debtor, because this is a Fannie Mae loan. And due to the mortgage settlement through the Department of Justice it had to be offered to him as a streamlined modification. It has been approved. However, notwithstanding the approval, Bank of America is of a position that this motion isn't necessarily based on the status of the mortgage . . . . Our fear is that even with a loan modification the Debtor can default next month, and we would be back to square one and starting this process all over again and trying to get this property liquidated for another eight-plus years.

July 22, 2014 Hr'g Tr. 3:10-22, ECF No. 119.

"[t]he Court previously entered a two year in rem sanction with respect to the same property . . . ." Order, Dec. 9, 2014, ECF No. 84.

Jackson received his Chapter 7 discharge on December 9, 2014 and the case was closed. Almost immediately thereafter Carlton House filed a praecipe in the state court foreclosure action to schedule a sheriff's sale on the Condominium. This was the final step in a foreclosure action commenced in the Cuyahoga County Court of Common Pleas in January 2008 by Countrywide Home Loans, BOA's predecessor. Carlton House and Countrywide previously obtained a decree of foreclosure in July of 2009.[2] Carlton House Condo. Unit Owners Ass'n of Cuyahoga County's Response in Opposition to Debtor's Motion to Reopen Bankruptcy Case at 16-20, Jan. 27, 2015, ECF No. 97. The judgment stated that "upon issuance of a Praecipe for Order of Sale by Plaintiff's attorney and/or Defendant Carlton House's attorney, the Clerk of Court must issue an order of Sale to the Sheriff commanding him to . . . sell the premises as upon execution and according to law, free and clear of the interest of all parties to this action." *Id.* at 19.

On January 21, 2015 Jackson moved to re-open his bankruptcy case for two reasons. The first was to avoid Carlton House's liens pursuant to 11 U.SC. § 522(f)(1)(A). The court rejected this reason at the hearing on the motion to re-open, recognizing that Carlton House's liens were statutory under Ohio law, not judicial, and therefore could not be avoided pursuant to that section of the Bankruptcy Code.[3] The second asserted reason was that Carlton House was attempting to collect discharged debts. Jackson wanted the bankruptcy court to "vacate and or stay the Sheriff Sale set for February 9, 2015" on the Condominium. Motion to Reopen Case No. 14-13977 Under 11 U.S.C. 350(b) and to Vacate/Stay Sheriff Sale Set for February 9, 2015 and Request to Expedite Emergency Hearing at 2, Jan. 21, 2015, ECF No. 93.

At a January 28, 2015 hearing the bankruptcy court expressed its concern that Carlton House's continuation of the foreclosure lacked a legitimate purpose because Carlton House was

---

[2] Carlton House was a necessary party to the foreclosure. Ohio Rev. Code § 5311.18(B)(3).

[3] The statutory lien extends to all "expenses that are chargeable against the unit and that remain unpaid for ten days after any portion has become due and payable." Ohio Rev. Code § 5311.18(A)(1). The lien becomes effective upon the date a certificate of lien is filed with the county recorder in the county where the property is situated. Ohio Rev. Code § 5311.18(A)(3).

unlikely to receive funds from a sheriff's sale. Counsel for Carlton House told the bankruptcy court:

> [s]o the Board of Directors, they have an obligation, a duty, to stop the bleed, to get a new homeowner into this property who is going to have the intent to pay fees. Whereas, the current owner, as evidenced by the total delinquency, has not expressed that desire or intent to resolve this matter with the Association. Therefore, it is the only judicial remedy at this point in time.

Jan. 28, 2015 Hr'g Tr. 9:10-17, ECF No. 122. The court responded that:

> Okay. But – and, again, the last statement that you made about expressing an intent to resolve this makes it seem[] like the point of this foreclosure is to get the payment part of it resolved, because there actually isn't the possibility for payment in this foreclosure. That's what I'm concerned with.

*Id.* at 9:18-24. The court acknowledged that the state court previously granted a decree of foreclosure and Carlton House was not required to show any equity under state law but nevertheless was concerned that "the purpose [is] to really force payment as opposed to foreclose and obtain in rem relief[.]" *Id.* at 10:19-20. The court entered an order re-opening the case to determine whether the foreclosure was a disguised in personam action against Jackson, in contempt of the discharge order.

The contempt hearing was scheduled on an expedited basis.[4] Carlton House appeared at the hearing through counsel and sought admission of one exhibit, a statement of fees owed. Carlton House did not have a witness to authenticate the document and the bankruptcy court determined that, without admissible evidence, Carlton House was "in violation of the show cause order." Feb. 6, 2015 Hr'g Tr. 4:2, ECF No. 123. Further, the court ordered that "[t]he sale that is scheduled for Monday [February 9, 2015] is ordered to be stopped, and we will have a further hearing on whether additional sanctions are appropriate." *Id.* at 4:3-5. The bankruptcy court further stated it was "perplexed" why "the condo association didn't just recertify the post-petition, post-discharge liens and proceed in a new [foreclosure] action and thereby making this

---

[4]Prior to the reopening of the case, Jackson did not file a separate contempt motion. After the hearing was re-scheduled from February 6 to March 3, 2015, Jackson filed a sanctions motion and the clerk issued a deficiency notice for a lack of notice. The bankruptcy court never directly addressed the sanctions motion in its written decision.

not even an issue, as opposed to moving forward under questionable circumstances and then not showing up." *Id.* at 4:24-5:5. The hearing was continued to March 3, 2015.

The contempt hearing proceeded on March 3rd. Transactions relating to the ownership of the Condominium from June 2007, when Jackson acquired it, were reviewed. Exhibit Tender Sheet, Joint Ex. B, ECF No. 112, Mar. 03, 2015.[5] In May 2009 Jackson quitclaimed the Condominium to his parents. Joint Ex. C. In March 2014 Jackson's parents quitclaimed the Condominium back to him, but that deed was not recorded until September 2014, after the bankruptcy was filed. Joint Ex. D.

Scott Sauter, the chief operating officer of Continental Management, testified on behalf of Carlton House as its management agent. Sauter testified concerning a post-petition account statement for condominium fees owed by Jackson (the "Account Statement"). Joint Ex. A. The statement ran from July 2014, after the petition date, through February 28, 2015. Sauter stated the pre-petition account statement was not used, so Continental Management was only addressing the post-petition fees due. Referencing the Account Statement, Sauter testified that Jackson made three post-petition payments and at the time of the hearing the delinquent post-petition balance was $3,300.76.

Sauter also explained the charges on the Account Statement, including a $390.81 "A1" charge entered each month for Carlton House's maintenance fee, various $25 administrative fees for late monthly payments, and a monthly $83.29 "C1" charge for reserves for long-term repairs. He testified that the Account Statement also includes a January 7, 2015 $802.95 charge for post-petition "attorney fees." Of the $802 charged, Sauter testified that "about 600, $612" was for filing a praecipe to schedule the sheriff's sale. Mar. 3, 2015 Hr'g Tr. 12:22, ECF No. 124. There was no testimony as to the remaining $200.

Additionally, Sauter testified that Carlton House pays for water, sewer, and gas for all the units. However, each unit must reimburse Carlton House for the cost of gas. If a unit owner does not pay, the other unit owners are responsible for paying those costs from their assessments.

---

[5]All the admitted exhibits may be found in the Exhibit Tender Sheet, ECF No. 112, Mar. 3, 2015.

The next witness was Charles Burkett, Jr., the Treasurer of the Carlton House Board. Burkett was asked about the previously scheduled sheriff sale.

> Q. And were you aware that Carlton House Condominium Association ordered a sheriff's sale on this property?
>
> A. Yes.
>
> Q. And why did the Association order a sheriff's sale?
>
> A. Because we were legally entitled to do so. And as part of our collection policy, we pursue all options that we're legally entitled to take. It's fairly straightforward, and that's a policy that's in force regardless of who the person is who may be delinquent. If I were to fall delinquent, I would expect that my colleagues would enforce the same procedure against me.
>
> Q. And does the board have any duty to do that?
>
> A. Absolutely.
>
> Q. Could you explain?
>
> A. We have a fiduciary responsibility to the rest of the unit owners, many of whom are elderly people on fixed incomes. And to the degree that one unit owner doesn't pay, then the other unit owners have to pay, which means that maintenance fees go up. And for people who are on fixed incomes, as we discussed at our last annual meeting, that can be very concerning. Because for many of the retired people, their income doesn't go up. So if we have to raise fees, then that poses a real hardship.
>
> . . .
>
> Q. And what contributing factors, if any, in terms of finances have led to any financial deficiencies?
>
> A. The foreclosures that have occurred in the building, unit owners who don't pay is really the Achilles heel. *And in this case it's gone on since 2007, so it's been detrimental to the financial health of the building.*

Mar. 3, 2015 Hr'g Tr. 16:9-17:8; 18:3-9, ECF No. 124 (emphasis added).

Jackson testified on his own behalf at the hearing. He stated that he made payments which were not included on the Account Statement. Jackson agreed $474.10 was listed as a payment made on November 4, 2014, but indicated he made additional payments between September 4, 2014 and November 2014. He later indicated that the additional payment may have been late October or early November, but had no receipt for that additional payment.

Jackson testified that he received the post-petition statement by mail but could not recall the date. *Id.* at 23-27.

At the conclusion of the hearing, the court ruled in favor of Jackson in an oral decision. The court stated that:

> Taking a look at the posture of this case, where we have the value of the property being significantly lower than what the first lien on the property is and the value of the condominium association liens, which would have come after, that coupled with the testimony with respect to the shortfall in the accounts leads me to the conclusion that the purpose of moving forward with the foreclosure was an attempt to force payment of the outstanding amounts.

*Id.* at 59:15-24. The court further noted that:

> And though I understand the condominium association followed its counsel in believing that it was appropriate to continue the foreclosure, I find that the continuation of the previous foreclosure is a violation of the discharge.
>
> In addition to that finding, having reviewed the documents with respect to what was paid and what was believed to have been paid, I make the following findings: The statement credits that were presented by the condominium association show that as of March 1, 2015, there was $5,138.65 that was due. That amount included $2,132.95 for attorney's fees. The testimony presented demonstrated that based upon the receipts that were presented and the recollection of Mr. Jackson that there would have been $2,434.29 that was paid.
>
> Reviewing all the information, I make the following determination: The sanctions in this case will be as follows. For violation of the discharge injunction, the attorney's fees of $2,132.95 shall be waived and removed from the outstanding balance due by Mr. Jackson. By continuing the initial foreclosure, which created the $800 charge, that was the initial violation. And then the continuing fees which accrued in connection with defending this action and stopping that foreclosure would be a continuation of that violation. And so those are all removed.
>
> There is an additional sanction of $474.10 recognized for the October payment that was alleged to be made but does not appear to be on the statement, and then a credit of $25 for the September payment, where the money order shows that it would have been purchased before the September 10 date for the assessment of a late fee but was not applied until November of 2015.
>
> There is credit given for the $482.89 payment that was made in February but has not yet been received. So at present there would be an outstanding balance due to the condo association of $2,497.81. It is – that still is the amount due. That amount is going to remain due and owing. *And as [to] what I believe should have*

*occurred in this case, the condo association is within its right if that amount is not paid to begin the foreclosure again.*

So as a recap, this continuation of the foreclosure should not have happened. You have a situation here where you have on-going post-petition fees that can be certified, and that foreclosure can be done. *There was a modification in the original case that concluded the underlying foreclosure. And although I appreciate the condo association and their counsel intending to ride the coattails of that action, because of the nature of the action and the – what appears to have been the intent of this action, the appropriate action would have been to institute your own foreclosure for the post-petition amounts that were not paid, not to continue the pre-petition amount . . .*

*Id.* at 60:2-62:7 (emphasis added).

On September 25, 2015 the bankruptcy court entered its "Memorandum of Opinion and Order." ECF No. 125 (*In re Jackson*, 539 B.R. 327 (Bankr. N.D. Ohio 2015)). The bankruptcy court re-stated its legal conclusion that the foreclosure by Carlton House was an attempt to coerce Jackson to pay the pre-petition fees owed on the Condominium. The court noted that Carlton House stated it had no intention of resolving the payment issue and therefore "compelled [Jackson] to resolve the issue by entering into payment arrangements for the discharged debt, or lose his home. Based on these facts, I find that Carlton House scheduled the foreclosure sale in order to induce Debtor to pay a debt for which he is no longer personally liable." *Id.* at 332.

**DISCUSSION**

**I.      The Bankruptcy Court's Conclusion that the Foreclosure was a "Disguised" In Personam Collection of Discharged Debts was an Abuse of Discretion**

While a debtor may not pursue a private right of action for a violation of the discharge by a creditor under § 524 of the Bankruptcy Code, he may pursue a motion for contempt of the discharge order. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). Contempt is a violation of "a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (internal citation omitted). It was Jackson's burden to show, by clear and convincing evidence, that Carlton House knowingly violated the discharge order. *In re Franks*, 363 B.R. 839, 843 (Bankr. N.D. Ohio 2006) (citations omitted). Carlton House does not

dispute it was aware of the discharge order and that its representatives intended their actions, but only whether those actions did in fact violate the discharge order.

The discharge of personal obligations through a Chapter 7 discharge does not terminate a secured creditor's in rem rights unless the creditor's lien was avoided during the bankruptcy. Carlton House's Ohio statutory lien continued post-discharge.  Thus, while Carlton House was not entitled to proceed in personam against Jackson for discharged pre-petition debts, it could proceed in rem against the Condominium for all sums secured by the lien, both prepetition and post-petition.

The bankruptcy court stated that "[r]eviewing the testimony of witnesses, and noting that none of Carlton House's witnesses stated that replacing Debtor with a paying unit owner was a motivating factor in scheduling the sheriff's sale, the Court finds that Carlton House scheduled the sale of the condominium unit in order to obtain the funds it needed to maintain and repair the property." *In re Jackson*, 539 B.R. 327, 332 (Bankr. N.D. Ohio 2015).  However, the testimony of Burkett was clear that Carlton House was struggling to address concerns arising out of home owners being delinquent on their condominium assessments and fees.  The delinquency owed to Carlton House for the Condominium had been an issue since 2007.  Burkett's testimony was consistent with Carlton House's legal position that the foreclosure was in order to "stop the bleed" and have a reliable, paying owner take title to the Condominium.[6]

The bankruptcy court concluded that "[b]ut, by scheduling the sheriff's sale, [Jackson] is compelled to resolve the issue by entering into  payment arrangements for the discharged debt, or lose his home." *Id.* at 332.  The court concluded that the foreclosure sale was scheduled to induce payment of discharged pre-petition condominium fees. However, *all* foreclosure litigation potentially can induce payments of discharged debt to avoid a foreclosure sale, since a lien, like the statutory lien of Carlton House, applies to all the underlying indebtedness – whether discharged personally as to the property owner or not. The evidence is that Carlton House

---

[6]It appears that the bankruptcy court gave significant weight to a statement of Carlton House's counsel during the hearing on the motion to reopen:  The contempt decision stated that Carlton House alleges that "[Jackson] had expressed no intent to resolve the payment issue, and that it was its policy to reject current payments without a payment arrangement, because there was a foreclosure pending." *In re Jackson*, 539 B.R. 327, 330 (Bankr. N.D. Ohio 2015). But the evidence at the contempt hearing showed that such a policy was based on the conclusion that unless the arrearages could be paid, the best decision for Carlton House was to foreclose to "stop the bleed."

wanted Jackson removed from the Condominium due to the arrears owed and Jackson's history of failing to reliably pay the dues and assessments owed. The only legal redress available to Carlton House was completing the long delayed foreclosure by scheduling the sheriff's sale. The bankruptcy court's reasoning, left to stand, would allow bankruptcy courts to second-guess a state court foreclosure order, conducted in compliance with state law (as further addressed below), as a disguised effort to collect discharged debts.

The bankruptcy court appeared to give little weight to the unique situation of a condominium (or similar) association. Carlton House is not a garden variety mortgagee or lien holder. It has statutory obligations to other unit owners under Ohio law. *See* Ohio Rev. Code § 5311.041(B) (stating that common expenses such as administration, maintenance, security, and recreation facilities shall be determined on a per unit basis). Carlton House had reason to be concerned that, without a foreclosure sale, Jackson may not pay the ongoing post-petition fees and assessments or the arrears that existed at the time of discharge. The bankruptcy court also did not consider how the multiple prior bankruptcy filings and transfers of the Condominium to insiders informed Carlton House's decision-making process.

The court focused on the lack of equity in the Condominium due to the primacy of the mortgagee's lien. The bankruptcy court did not consider that: (1) the costs of completing the foreclosure would be paid to Carlton House;[7] (2) that the burden was on Jackson to show contempt; and (3) that the sale price for a foreclosure cannot be known until the sale actually occurs. By not considering such factors, the bankruptcy court effectively imposed an "equity requirement" that is not part of the Ohio foreclosure sale process and, again, misunderstands the motivation of Carlton House. The conclusion that Carlton House was pursuing this matter as a disguised in personam action is an abuse of discretion.

---

[7]The foreclosure decree provided that the sheriff would pay the costs of the action, including the costs Carlton House spent scheduling the multiple sheriff sales in the past. Carlton House Condo. Unit Owners Ass'n of Cuyahoga County's Response in Opposition to Debtor's Motion to Reopen Bankruptcy Case, Ex. C, ECF No. 97, Jan. 27, 2015.

**II.     The Injunction Prohibiting Carlton House from Enforcing the Prepetition Foreclosure Judgment was an Abuse of Discretion**

As part of its remedy, the bankruptcy court erroneously enjoined Carlton House from further enforcement of its prepetition foreclosure judgment:  "Carlton House may not proceed with any further action to prosecute the pre-petition foreclosure or the attendant sale." *In re Jackson*, 539 B.R. 327, 333 (Bankr. N.D. Ohio 2015).  However, due to the doctrine of lis pendens, codified at Ohio Revised Code § 2703.26, it may be legally impossible for Carlton House to exercise the option the bankruptcy court suggested, a new post-petition foreclosure, because an action is already pending. *See Avco Fin. Servs. Loan, Inc. v. Hale*, 520 N.E.2d 1378 (Ohio Ct. App. 1987) ("[W]hile the foreclosure action . . . is pending, no other action may be commenced concerning the property."); *Martin, Rochford & Durr v. Lawyer's Title Ins. Corp.*, 619 N.E.2d 1130, 1131 (Ohio Ct. App. 1993) (lis pendens applies between the time of the foreclosure judgment and the sheriff's sale).

Regardless, mandating that Carlton House pursue a separate post-petition foreclosure is inconsistent with the state court foreclosure decree.  Rather than confine the contempt remedy to addressing any improper in personam collection, the bankruptcy court effectively permitted a collateral attack on that state court foreclosure judgment in not allowing that judgment to be effectuated by Carlton House *under any circumstances*.  The foreclosure judgment is a property interest which replaced its lien and it is entitled to enforcement as part of Carlton House's in rem rights.

Finally, while the court acknowledged that a creditor such as Carlton House retains its in rem rights if the creditor's lien is not avoided in the bankruptcy, the court refused to allow Carlton House to exercise those in rem rights as to the prepetition amounts owed.  The stated rationale was that Carlton House was only enforcing its in rem rights to coerce the Debtor into paying the prepetition fees owed.  As explained, the record does not support that conclusion, but, looking beyond this fact pattern, such a standard would chill secured creditors' exercise of their in rem rights.  Again, any exercise of in rem rights includes either the intended or unintended consequence of requiring the debtor to voluntarily cure arrearages, including prepetition arrearages, or face the loss of the collateral.  A foreclosure does not distinguish between

prepetition and post-petition amounts owed.  While such a distinction is, of course, crucial if a creditor is attempting to collect from the debtor personally and not against the property, for in rem purposes, the creditor may enforce its lien as to all sums due, not just post-petition arrears.

**III.    The Bankruptcy Court Abused its Discretion in Determining That Carlton House's Post-Petition Assessment of "Attorney Fees" Related to the Scheduling of the Foreclosure Sale Violated Jackson's Discharge**

The bankruptcy court found that the $802 in post-petition "attorney fees"[8] should not have been charged to Jackson, but only in rem to the Condominium as part of the state court foreclosure.  *Jackson*, 539 B.R. at 333 .  The court found the attempt to collect these fees was an attempt to setoff discharged pre-petition obligations.  *Id.*[9]

As an initial matter, Carlton House may charge reasonable attorney fees under state law to collect delinquent obligations.  *See Nottingdale Homeowners' Assoc., Inc. v. Darby*, 514 N.E.2d 702, 707 (Ohio 1987) (requiring unit owner to pay attorney fees associated with a foreclosure action is not void as against public policy, if the fees are "fair, just and reasonable"); *See also* Ohio Rev. Code § 5311.18(A)(2)(c) (unit owners' association's lien includes delinquent collection costs and attorney fees).  Carlton House cannot charge attorney fees to collect discharged in personam debts, however, because that would violate the debtor's discharge.

The bankruptcy court believed that Carlton House was required to initiate a new post-petition foreclosure to collect attorney fees because the scheduling of the foreclosure sale was an attempt to collect a pre-petition debt.  The bankruptcy court cited *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998).  In *Siegel*, a debtor pursued a post-petition tort and breach of contract action against a mortgagee related to foreclosures upon two properties in which he had an ownership interest.  The action was barred by res judicata because the debtor

---

[8]As noted, about $600 of the $802.95 in attorney fees was the court fee for the post-petition, post-discharge praecipe required by the state court to schedule the sheriff's sale.

[9]The evidence of the attempt to collect from Jackson, beyond the foreclosure itself being interpreted as a "disguised" in personam action, was the single Account Statement sent to Jackson post-discharge.  The $802.95 in "attorney fees" was included in that Account Statement.  It was unclear from the record if the Statement was sent as a routine matter of collection, condominium policy, or as part of the foreclosure procedure.  Neither party addressed at the hearing the reason Carlton House sent it despite the fact it is the only possible evidence of a post-discharge attempt to collect funds from Jackson.  Ultimately, the bankruptcy court's decision is mostly based on the conclusion that the foreclosure was a disguised in personam action.

failed to object to the mortgagee's proof of claim during the bankruptcy. Relevant to the instant case, the mortgagee was awarded attorney fees in defending the tort and breach of contract action. The debtor argued that the attorney fee claim was discharged in the bankruptcy, along with the pre-petition note. The Ninth Circuit found that the debtor did not have any personal liability for the pre-petition note or related attorney fees or costs. However, because the debtor pursued a separate post-petition action, the mortgagee defendant could be awarded attorney fees.

In this appeal, the bankruptcy court construed the post-discharge foreclosure sale and the sending of the Account Statement that included all post-petition costs, including the $802, as impermissible because it was an attempt to offset the costs of collecting a pre-petition debt. The court seemed to suggest if the fees were related to a post-petition foreclosure, the fees would be acceptable: "[h]ere, the attorney fees charged to [Jackson] were not incurred by his initiating new, post-petition litigation on pre-petition claims of Carlton House." *Jackson*, 539 B.R. at 333. However, the fees are not a setoff of any discharged obligation, but instead a post-petition charge owed by Jackson, as a unit owner of Carlton House. Further, the bankruptcy court, citing *Siegel*, stated that "[w]hen the possibility of a claim against the debtor was fixed and entirely out of his hands before he entered bankruptcy and liability was contingent upon what others might do, the debt is discharged." *Id.* Jackson voluntarily continued to maintain his interest in the condominium post-petition and Carlton House had ongoing post-petition obligations that are not related to the in personam collection of a pre-petition debt. *Siegel* is inapposite.

The effect of a Chapter 7 discharge on the post-petition obligations owed to condominium associations is addressed by Bankruptcy Code § 523(a)(16):

> A discharge under section 727 . . . does not discharge an individual from any debt—
>
> . . .
>
> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership . . . for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit . . . but nothing in this paragraph shall except from discharge the debt of a debtor for a membership

association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.[10]

11 U.S.C. § 523(a)(16). This section resolves any issue as to Carlton House's fees or assessments being deemed pre-petition as long as those fees or assessments are "due or payable" post-petition regardless of when the claim arose. *See In re Barr*, 457 B.R. 733, 737 (Bankr. N.D. Ill. 2011) ("The special Assessment was made two months after the petition date and did not become due or payable until after that date. This result is in conformity with the legislative intent of the statute because the Debtors have enjoyed the benefits of post-petition ownership and possession."); *In re Langenderfer*, 2012 Bankr. LEXIS 1809, at *4-8, Case No. 10-31741 (Bankr. N.D. Ohio Apr. 23, 2012) (debtor with legal title to the condominium could not discharge post-petition fees or assessments). Neither the parties nor the bankruptcy court in its oral or written decision addressed § 523(a)(16). However, under its plain meaning, the court fee of $600 for the praecipe and the balance of $202 in unspecified post-petition attorney fees are each a "fee." *See In re Burgueno*, 451 B.R. 1, 4 (Bankr. D. Ariz. 2011) (post-petition attorney fees constitute a "fee" within the meaning of § 523(a)(16)); *Oakland Ridge Homeowners Assoc. v. Braverman (In re Braverman)*, 463 B.R. 115 n. 5 (Bankr. N.D. Ill. 2011) (citing *In re Burgueno,* 451 B.R. at 4-5) ("Even if the Declaration did not specifically make the Association's attorney's fees an assessment, the fees are at least arguably a "fee" for purposes of section 523(a)(16)."). The record does not provide any evidence that the $802.95 in charges are inconsistent with Jackson's continuing, post-petition obligation to pay fees and assessments to Carlton House. Those charges were not discharged because they were "due or payable" post-petition and cannot be a basis for finding Carlton House violated Jackson's discharge.

---

[10]Liability of Chapter 13 debtors for post-petition condominium association fees and assessments has generated a fair amount of case law. The reason is that § 1328 does not list § 523(a)(16) debts as an exception to a Chapter 13 discharge. *See, e.g. Foster v. Double R Ranch Assoc. (In re Foster)*, 435 B.R. 650, 658-59 (B.A.P. 9th Cir. 2010) (§ 523(a)(16) discharge exception does not apply to the chapter 13 discharge under § 1328(a)). *See also Maple Forest Condo. Ass'n v. Spencer (In re Spencer)*, 457 B.R. 601 (E.D. Mich. 2011) (reviewing the past case law theories and deciding, whether viewed as a contractual right or a property right, assessments of condominium fees post-petition are post-petition claims that are not subject to the debtor's discharge); *In re Kahn*, 504 B.R. 409 (Bankr. D. Md. 2014) (stay lifted in Chapter 13 due to unpaid post-petition assessments; however, court noted, upon plan consummation, all assessments would be discharged and the condominium association would be limited to in rem relief). The Panel expresses no opinion on the dischargeability of condominium fees and assessments in Chapter 13.

## CONCLUSION

For the reasons stated, the bankruptcy court's decision is reversed and the sanctions order is vacated in its entirety.